## CLAPP VS. UPSON, impleaded with STRICKLAND.

S. and U. had been partners in business as booksellers, in Mobile, Ala., under the name of "S. & Co.," but in the fall of 1856, their business in that place was broken up by violence, and they were compelled to leave the state, which facts were of public notoriety. Their partnership was thereupon dissolved, and public notice of the dissolution given. In the fall of 1857, S., who had then become engaged in the business of a bookseller at Milwaukee, in this state, which was conducted under the name of "S. & Co." (but in which U. had no interest), bought goods for that trade from a merchant in New York, giving therefor a note signed "S. & Co.," payable to the order of the plaintiff in this suit. The vendor of said goods had dealt with the firm of "S. & Co." at Mobile, during the years 1855–6, and although he had heard of the trouble in their business in that city, and supposed it was the reason why S. removed to Milwaukee, testified that at the time of the giving of the note sued upon, he had no knowledge that the firm of "S. & Co." in Mobile was dissolved, but supposed the firm in Milwaukee to be the same as it was in Mobile. The plaintiff was, in 1855, a member of a firm in New York, which had dealings with "S. & Co." at Mobile, and testified that he retired therefrom in 1856, and that at the time of taking said note he had received no notice of the dissolution of the firm of "S. & Co.," but had heard that they had been assailed by a mob in that city, and that their property was protected by the city authorities: *Held*, that the vendor was not justified in presuming that the firm of "S. & Co." at Milwaukee, was the same as the former firm of that name in Mobile, the distance between the places, and the other circumstances of the case, being sufficient to put him upon inquiry in that respect; and that the plaintiff could not recover against U. upon the note.

APPEAL from the Circuit Court for *Milwaukee* County.

Action by *Clapp* against *Upson* and *Strickland*, as partners, upon a promissory note executed in the name of "Strickland & Co.," and payable to the order of the plaintiff. *Strickland* suffered default, and *Upson* answered under oath denying his execution of said note, or that he was a partner of *Strickland* at the time when the note was executed. On the trial of this issue, the depositions of the plaintiff and one Allen were read in support of the action. Allen testified that he was a dealer in printers' cards, &c., in the city of New York, during the years 1855, '6 and '7; that he sold goods to the defendants during the years 1855 and '6,

at which period they were partners in the book and stationery business in Mobile, Alabama, under the name of " Strickland & Co. ;" that he had not, at the time of the sale of thè goods for which the note in suit was given, received notice of the dissolution of said firm; that he had heard of some difficulty at Mobile, growing out of the sale, by Strickland & Co., of abolition books, and supposed this was the reason why *Strickland* removed to Milwaukee; but that he had no knowledge of the breaking up of the firm of Strickland & Co. in Mobile; "that the note in this action was given for goods sold by the deponent to *Strickland*, in the name of Strickland & Co., while the purchaser was doing business in Milwaukee, to wit, on the 6th day of May, 1857, which goods were invoiced to Strickland & Co., as formerly when sent to Mobile, and that he then supposed the firm in Milwaukee to be the same as in Mobile."

The deposition of the plaintiff stated that he was in the paper business in the city of New York, in the year 1855, as one of the firm of J. S. Derrickson & Co., and retired from said firm in 1856; that said firm did business with the firm of Strickland & Co., of Mobile, and that the deponent had received no notice of the dissolution of said last named firm previous to the making of said note; that-he had been told that the said firm of Strickland & Co. was assailed by a mob, and that their property was protected by the city authorities, but not that the firm was broken up; and that he did not personally know the consideration of said note of Strickland & Co., payable to his order. The note, which was offered in evidence, was for $220 51, was dated Nov. 7, 1857, and was payable to the order of the plaintiff at 12 months from date. The record states that several letters, signed Strickland & Co., and bearing date in the years 1855, '6 and '7, were read in evidence, to show the course of business between the defendants and said Allen, some of which were dated at Mobile and some at Milwaukee, and, among others, one enclosing the note upon which this action was brought, which was dated Milwaukee, Nov. 2, 1857, addressed to said Allen, and signed " Strickland & Co.," in which it is stated, " We enclose our note for $220 51, as per your request."

The defendant *Upson*, by his counsel, moved the court for a judgment of non-suit, which was refused, and the defendant excepted. On the part of the defense, it was proven that the said firm of Strickland & Co., composed of the defendants, *Strickland* and *Upson*, was dissolved at Mobile in the fall of the year 1856, of which fact public advertisement was made in a daily newspaper published in the city of Mobile, and by printed circulars; that previous to such dissolution the business of said firm was forcibly assailed and broken up and the parties compelled to leave the city; and that such forcible breaking up of said business was a matter of public notoriety in Mobile and elsewhere. It was also proven, that since such dissolution said *Strickland* and *Upson* had not been partners in business anywhere.

The court instructed the jury "that the said Allen, who sold the goods for which the note was given, as between him (Allen) and the defendant *Upson*, was entitled to actual notice of the dissolution of the firm of Strickland & Co., and that, in the absence of such actual notice, he could reasonably infer that the firm of Strickland & Co. in Milwaukee was one and the same with the Mobile firm, and would, in such case, be entitled to recover against *Upson*, in an action between them for the value of such goods; and that if the jury found that the note in this case, made by Strickland & Co. to the order of the plaintiff, was delivered to Allen in settlement of the bill of goods purchased of him by *Strickland*, under the name of Strickland & Co., subsequently to the dissolution of Strickland & Co. at Mobile, and that Allen had received no actual notice of such dissolution, then the plaintiff would be entitled to recover against the defendant *Upson*, in this action, and that the plaintiff, in his action upon said promissory note, is entitled to the same equities that said Allen would have been entitled to in an action by him against the said defendant upon an account, or upon a note given to himself for said goods." To these instructions the defendant excepted.

The defendant's counsel requested the court to instruct the jury as follows: "1. If the jury find that the plaintiff in this action seeks to recover against the defendant *Upson*, upon a

note made by the defendant *Strickland*, to the order of the plaintiff, after the firm of Strickland & Co. of Mobile had been in fact dissolved, and when *Upson* was not a partner with *Strickland*, and not in settlement of any bill of goods sold by the plaintiff to the defendant *Strickland*, or on account of any dealings between *them*, the plaintiff will not be entitled to a judgment against *Upson*.  2. If the jury find that Allen knew of the breaking up of the business of Strickland & Co., in Mobile, this was in itself a sufficient circumstance to put the said Allen upon inquiry as to the continuance of the identical firm in Milwaukee; and having information of such violence in Mobile, he cannot presume that the Milwaukee firm is the same with the Mobile firm. There is no presumption applicable to this case, that the Milwaukee firm was the same as the Mobile firm; the distance and dissimilarity between the two forbid it." These instructions the court refused to give, and the defendant excepted.

Verdict against the defendant *Upson*. Motion for a new trial overruled, the defendant *Upson* excepting, and judgment upon the verdict.

*Nelson Cross*, for appellant:

The plaintiff, as an individual, had never had dealings with Strickland & Co., of Mobile. Hence the *notice of dissolution*, published in the Mobile paper, is sufficient as to *him*. Coll. on Part., 311, 312, §§ 531, 532; *Lansing vs. Gaine*, 2 John., 303, 304; *Ketcham vs. Clark*, 6 id., 147; *Graves vs. Merry*, 6 Cow., 701; *National Bank vs. Norton*, 1 Hill, 578; *Mowatt vs. Howland*, 3 Day, 353.  2. The principle that after a partnership is dissolved, one partner, dealing with a person who has no notice of the dissolution, may bind his copartner, applies only to transactions *in the usual course of business*. *Whitman vs. Leonard*, 3 Pick., 177; *Bernard vs. Torrance*, 5 Gill. & J., (Md.), 383. The transaction between Allen and *Strickland*, as to the making of this note is *unusual and extraordinary*.  3. As to a person entitled to actual notice of dissolution, under the rule, notice may be inferred from circumstances. *Mauldin vs. Bank*, 2 Ala., 505; *Coddington vs. Hunt*, 6 Hill, 595; *Irby vs. Vining*, 2 McCord, 379; *Whit-*

*man vs. Leonard, supra.* The court therefore erred in refusing to give the jury the second instruction asked by the appellant. 4. The authority of one partner to bind another ceases upon the dissolution of the partnership, and the rule applies even to the case of a promissory note made in settlement of a partnership debt, by the partner authorized to make such settlement. *Draper vs. Bissel,* 3 McLean, 275; *Lockwood vs. Comstock,* 4 id., 383; *Lansing vs. Gaine,* 2 John., 300; *Lusk vs. Smith,* 8 Barb. (S. C.), 570; *Perrin vs. Keene,* 1 App., 355; *Woodworth vs. Downer,* 13 Vt., 522. He cannot even renew a partnership note, (*National Bank vs. Norton, supra; Galliott vs. Bank,* 1 McMullen, 209,) nor endorse the notes given to the firm, so as to bind the firm. *Sanford vs. Mickles.* 4 John., 226; *Parker vs. Macomber,* 18 Pick., 505. The exception to this rule is where the party taking such note is a creditor of the firm whose name is signed as maker, holding such relations to it as to be entitled to notice of its dissolution. The facts in this case do not bring it within the exception. The plaintiff in this action is not such a party. The peculiar rights and *equities* of such a party are not capable of being transferred to another.

*E. Marriner,* for respondent:

1. An ostensible partner retiring from a firm, must, if he would be released from liability for the subsequent transactions of the firm, with those who have dealt with such former firm, give actual notice of such retiring; and until such actual notice, the former partnership still exists as to all persons having previously so dealt. Coll. on Part., § 530, *et seq.,* and cases cited: Story on Part., § 334, and cases cited; *Ketcham vs. Clark,* 6 John., 144; *Kelley vs. Hurlburt,* 5 Cow., 534; *Vernon vs. Manhattan Co.,* 17 Wend., 524; *Same vs. Same,* 22 id., 183. To this rule there is but one exception, viz., when the dissolution is by operation of law. Coll. on Part., § 120, and cases; Story on Part., §§ 336, *et seq.* 2. A purchaser of a note executed in the partnership name by one of a firm, in the partnership business, after dissolution of the partnership, to a former dealer with the firm, without notice of the dissolution, may enforce it against all the partners,

even though such purchaser have notice of the dissolution at the time of purchase. *Graves vs. Merry*, 6 Cow., 701.

June Term, 1860.

CLAPP<br>v.<br>UPSON.

October 15.

*By the Court*, PAINE, J. We think the court below erred in applying to this case the general rule, that where a person known as a partner retires from the firm, he, notwithstanding that, remains liable to those who, having previously dealt with the firm, continue to deal with it without actual notice that he has left it. That rule is founded on the fact that those persons who continue to deal with the firm, do so upon the faith and credit of those whom they had known to constitute it, and that they have the right to assume that it remains the same, until they have some information to the contrary. Now it seems to us that the entire reason of this rule fails in this case, the facts of which are certainly of an extraordinary character. Strickland & Co. did business as booksellers at Mobile in Alabama. The defendant *Upson* was at that time a member of the firm. Their business was broken up by violence, and they were compelled to leave the state. These facts were notorious, and were known to the person selling the goods to recover for which this suit was brought. The firm actually dissolved at the time, and *Upson* ceased to be a member of it, though notice of that fact was not brought home to Allen, who sold these goods. Subsequently *Strickland* came to Milwaukee, and it seems a new firm was established under the old style of "Strickland & Co., of which, however, *Upson* was not a member. Then these goods were sold to *Strickland* for the establishment in Milwaukee, and he gave a note in the firm name. Allen, the vendor, had previously dealt with Strickland & Co., in Alabama, and testified that he supposed it was composed of the same persons in Milwaukee. But the question is, had he a right to suppose so? Had he the same right to assume that to be the case, that one dealing with a firm under ordinary circumstances has, to assume that it remains composed of the same persons, until notified to the contrary? It seems to us not. Ordinarily there is nothing to suggest an inquiry to the dealer. Nothing has happened to indicate the probability that a change has taken place. Therefore the law gives

June Term,
1860.

CLAPP
v.
UPSON.

him the right to assume that no change has taken place, and holds those responsible to him on whose credit he thus continues fairly to deal, until they notify him that they are no longer members. But here the whole case is different. The facts suggest at once to every mind the probability that the firm in Milwaukee may not be composed of the same persons as the firm in Mobile. It is not reasonable, therefore, for the dealer to assume that it is, and if he chooses to assume it, it should be at his own risk. Suppose Mobile had been destroyed by an earthquake, or by war, and *Strickland* had subsequently been found in California, or in London, in partnership with somebody, but with nothing in the firm name to indicate whom—could it be said that any previous dealer could, without inquiry, reasonably sell him goods on the credit of those who were members of the firm in Mobile? We think not. It would be unreasonable for him to do so. The facts before him would show that it was at least quite as probable that they were not members, as that they were. And if he then deals it should be at his own risk. We do not intend here to establish a rule applicable to any case where there may be slight circumstances tending perhaps to excite suspicion or suggest inquiry, or to any ordinary change in the place of doing business by a firm. But we do think that when, as in this case, the entire business of a partnership at its established location is broken up by violence, and one of the partners is found in a distant part of the world, doing business afterwards, under the same firm name it is true, but one which indicates none of the old members except himself, the presumption that it is the same firm ceases to be the natural and ordinary presumption, and those who deal with it as such without inquiry, ought not to bind men who do not belong to it.

The judgment, as against the appellant *Upson*, must be reversed, with costs, and a new trial awarded.