BENJAMIN vs. COVERT, imp.

PARTNERSHIP. *(1) Evidence of partnership. (2) When former partner liable for debt contracted after a dissolution.*

1. A chattel mortgage in the usual form from A. to B. is not evidence tending to show the existence of *a partnership* between them at its date.

2. In an action to charge two persons as partners, if plaintiff shows that a partnership existed between them at a certain time, and was known to the public at the place of business of the firm, and that no notice of dissolution was ever given, he may further show that at the time of the transaction in question such partnership, to plaintiff's knowledge, was *generally reputed to continue*, and that the debt was contracted in the firm name, and upon the credit of the firm, though after a dissolution in fact; it being then for the jury to determine whether the retiring partner had so acted after the dissolution as to hold himself out as still a partner, and had thus rendered himself liable. So *held* where the firm name was the same as the individual name of the person who continued the business, and where the plaintiff had never done business with the firm during its actual existence.

APPEAL from the Circuit Court for *Rock* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought to recover the balance due the plaintiff for a quantity of coal alleged to have been sold by him to *George Covert*, the respondent, and Augustus Covert, as partners in business, on the first of December, 1876. The respondent denies that he was a partner in business with the said Augustus Covert at the time of the sale of said coal, or at any other time after the middle of March, 1874, and further denies all indebtedness, on account of said coal, to the plaintiff.

" The evidence shows that the coal was bought by Augustus Covert at the time stated in the complaint; that previous to March, 1874, Augustus Covert carried on business in his own name, buying and selling grain, coal and other things, at Clinton, Rock county, Wisconsin; and that he continued such business in said place and in the same manner, until after the purchase of the coal of the plaintiff; that, although the business was done in the name of A. Covert, the respondent was a partner in said business down to the middle of March, 1874; and that he was known to be such partner in said business at Clinton, where the same was carried on, until March, 1874.

" The respondent testified on the trial, that about the middle of March, 1874, he dissolved his connection with A. Covert as a partner, and has not been in any way connected in business with him as a partner since that date; that no notice of the dissolution of such partnership was given either to individuals or to the public generally; and that the plaintiff had no knowledge of the existence of such partnership whilst it existed, was an entire stranger to Augustus Covert previous to the time he sold the coal to him, and never had any dealings with the alleged firm of Augustus Covert and *George Covert* until he sold the coal in question.

" Under the rulings and instructions of the court, the jury found a verdict in favor of the respondent, *George Covert*, upon which judgment was entered; and the plaintiff appeals, and

alleges as error that the circuit judge improperly excluded certain evidence offered by him on the trial, and refused to give certain instructions to the jury requested by him."

For the appellant, there was a brief by *Cassoday & Carpenter*, and oral argument by *Mr. Cassoday*.

For the respondent, there was a brief by *Bennett & Sale*, and oral argument by *Mr. Bennett*. They contended, among other things, 1. That the statement of Augustus Covert that he and the respondent were partners, was not admissible against the respondent. *Burgue v. De Tustet*, 3 Starkie, 53; *Flower v. Young*, 3 Campb., 240; *Tinkler v. Walpole*, 14 East, 226; *Cooper v. South*, 4 Taunt., 802; *Whitney v. Ferris*, 10 Johns., 66; *Tuttle v. Cooper*, 5 Pick., 414; *Robbins v. Willard*, 6 id., 464; *McPherson v. Rathbone*, 7 Wend., 216; *Kirby v. Hewitt*, 26 Barb., 607; *Hoppock v. Moses*, 43 How. Pr., 201; *Davidson v. Hutchins*, 1 Hilt., 123; *Whitney v. Sterling*, 14 Johns., 215; *Allcott v. Strong*, 9 Cush., 323; *Grafton Bank v. Moore*, 13 N. H., 99; *Chase v. Stevens*, 19 id., 465; 2 Greenl. Ev., 484, note 6. 2. That general reputation is not competent evidence to show the existence of a partnership. Collyer on Part., § 777; *Smith v. Griffith*, 3 Hill, 333; *Mills v. Shult*, 2 E. D. Smith, 139; *Scott v. Blood*, 16 Me., 192; *Hicks v. Cram*, 17 Vt., 449; *Carlton v. Ludlow Woolen Mill*, 27 id., 496; *Brown v. Crandall*, 11 Conn., 92; *Joseph v. Fisher*, 3 Scam., 137; *Carter v. Douglass*, 2 Ala., 499; *Lockridge v. Wilson*, 7 Mo., 560; *Sinclair v. Wood*, 3 Cal., 98. 3. That there was no error in refusing the instruction asked by plaintiff, that if a partnership was found to have existed at any period there was a presumption that it continued until *public* notice of dissolution. When a partnership is for a limited time, it will expire by its own limitation; if for an indefinite time, it may be dissolved by either party (*Skinner v. Tinker*, 34 Barb., 333; *Pine v. Ormsbee*, 2 Abb. Pr., N. S., 375); and many other things work a dissolution without public notice, such as death, insanity

or bankruptcy. *Griswold v. Waddington*, 15 Johns., 57. And public notice of dissolution is not sufficient as to those who have had dealings with the firm, but actual notice must be given them. 4. That want of knowledge of the dissolution of the partnership could not avail the plaintiff, because he had no dealings with the firm until long after it ceased to exist, if it ever existed. *Brisbau v. Boyd*, 4 Paige, 17; *Davis v. Allen*, 3 N. Y., 168. If respondent was a partner in 1873–4, he was only a dormant partner, his name not appearing in the business (*North v. Bloss*, 30 N. Y., 374; *Kelley v. Hurlburt*, 5 Cow., 534; *Mitchell v. Dall*, 2 Harris & Gill, 159; Collyer on Part., § 4; Parsons on Part., 34, § 5, note p; id., 431 [\*416], and 432, note j); and a dormant partner is only chargeable to third persons in respect of contracts entered into by the firm while he is actually a partner. Collyer on Part., § 536; *Evans v. Drummond*, 4 Esp., 89; *Kelley v. Hurlburt, supra; Grosvenor v. Lloyd*, 1 Met., 19; *Armstrong v. Hussey*, 12 S. & R., 315.

TAYLOR, J. The plaintiff, as evidence tending to show an existing partnership between the two Coverts, offered in evidence a chattel mortgage purporting to have been given by Augustus Covert to *George Covert* to secure the sum of $2,000, dated February 13, 1877. This was objected to by the defendant, and excluded by the court. We think this evidence was properly excluded. It is difficult to understand how the giving and taking of the mortgage would tend to prove a partnership. It seems to us the only relationship between the parties, which would be proved by this transaction, would be that of debtor and creditor.

The plaintiff also offered to show by his witnesses, "that from July, 1873, to the middle of February, 1877, the business of buying and selling grain, coal and other things in the village of Clinton, Rock county, Wisconsin, carried on in the name of A. Covert, was understood by the public there as being carried on by *George Covert* and Augustus Covert in

partnership, and during that time *George Covert* lived in the village, where he could know of the fact;" and this testimony was offered "for the purpose of corroborating the other testimony given in the case that they were actually partners." The plaintiff further offered to prove "that during that time Augustus and *George Covert* had the general reputation in the neighborhood where they lived of being partners in the business, and that *George Covert* had the general reputation of being the responsible member of the firm, and Augustus Covert the reputation of being the irresponsible member of the firm." The plaintiff's counsel then said to the court, "that he made the offer for the purpose of corroborating other direct testimony in the case tending to show such partnership, and repeated the offer separately for the purpose of showing that the plaintiff sold the goods in question on the faith and credit that *George Covert* was a partner of his brother Augustus in that business, and did the business in the name of A. Covert."

The plaintiff testified that he first saw Augustus Covert at his office in Milwaukee, in the latter part of October, 1876, when he desired to purchase some coal; that Augustus Covert made certain statements to him, upon which he made inquiries at the commercial agency, and was to ship the coal if he found his statements correct; and that he did not see him again until after he shipped the coal.

The counsel for the plaintiff then offered to prove by him "that Augustus Covert at the time represented that his brother *George* was a partner of his, and that he was responsible, and that the business was carried on in the name of Augustus Covert on account of his brother having another partnership, in the drug business; and that the plaintiff declined to send the goods at all until he investigated by inquiries at the commercial agency; that he did make such inquiries, and learned from those inquiries that *George* was a partner; and that he shipped the goods on the faith and credit of *George* being a partner of Augustus Covert."

These several offers of evidence were rejected by the court, and proper exceptions were taken by the plaintiff to each of the rulings of the court in rejecting them.

After the evidence was closed, the plaintiff's counsel asked the judge to instruct the jury as follows: "If you find from the evidence that at any time between July, 1873, and February, 1877, *George Covert* was partner with Augustus Covert, under the firm name of 'A. Covert,' then the presumption is that he continued such partner until public notice of the dissolution of the firm." This was refused, and exception taken.

The record shows that evidence had been given on the trial which tended to show, and as the learned circuit judge charged the jury, did show, that for some time previous to the middle of March, 1874, the respondent, *George Covert,* was doing business with his brother Augustus as a partner in the grain and coal business at Clinton, in this state, under the name of "A. Covert;" that the existence of such partnership was known to the people of Clinton and others previous to March, 1874; that no notice of the dissolution of such partnership had been given by either party thereto, in any way, previous to the date of sale of the coal by the plaintiff; that the plaintiff had never had any dealings with the partnership previous to the sale of the coal, and knew nothing of the existence of such partnership until the time he made the sale; that the partnership had in fact been dissolved by private agreement between the parties, about the middle of March, 1874; and that the plaintiff had no knowledge of such dissolution at the time he made the sale.

In this state of the evidence it is claimed that, notwithstanding the partnership had been dissolved by the mutual agreement of the parties, as no notice of such dissolution had been given, it was competent for the plaintiff to show that they were generally reputed to be still partners in the same business, in the place where the business had been carried on, down to the time of the sale made by the plaintiff to them.

When the fact of a partnership has been established by competent evidence, and the fact of its existence has become known to the public where the business is carried on during the existence of such partnership, and no notice of a dissolution of the partnership has been given, we are of the opinion that it is competent to show that it was generally reputed that such partnership continued, for the purpose of charging the retiring partner with the payment of debts contracted in the name and upon the credit of such firm after a dissolution in fact.   In such case, the retiring partner not having done anything to notify the public that he has retired from the partnership, it may be presumed that he had knowledge of such general reputation; and if he permits such reputation to prevail, and does nothing to correct the public opinion, he is in law bound to respond to those who have acted upon such reputation and given credit to the firm as a continuing firm upon the faith thereof.   In such case, the retiring partner comes clearly within the rule laid down by all the authorities, which hold the retiring partner still liable if he does anything to induce a belief in the public that he still remains a member of the firm, such as permitting his name to be used by the remaining partners, or permitting it to remain on the premises, cards, checks, invoices, etc., after his retirement. 2 Bell's Cases, book 7, ch. 2, p. 532; *Williams v. Keats*, 2 Starkie, 290; Story on Partnership, § 160; *Davis v. Allen*, 3 Coms., 168.   If he knows of such general reputation, and does nothing to counteract the effect thereof, he must be considered in law as still holding himself out as a partner in the business, notwithstanding he has by a private arrangement retired from the same.

If we were to hold, as is claimed by the learned counsel for the appellant, that, when it is once shown that the defendant was a partner, he remains liable for all debts contracted by any member of the firm relating to the partnership business until the retiring partner gives notice of the dissolution of the

firm, it would be wholly unnecessary to consider this ques-
tion of the evidence of reputation. Although the respond-
ent's name did not appear in the firm name, which was, in
fact, the individual name of his brother, and he might there-
fore be considered, in one sense, a secret or dormant partner,
and therefore only liable for debts contracted while he was in
fact a partner, yet, it having become a matter of public noto-
riety during the existence of his partnership with his brother,
that he was a partner in the business carried on in the name
of "A. Covert," he no longer remained a secret or dormant
partner, but became chargeable in the same manner as though
his name had appeared in the firm name; and, in order to
relieve himself from responsibility as such partner, after his
connection therewith had become public, he was bound by the
same rules which are applicable to public partnership. *U. S.
Bank v. Binney*, 5 Mason, 176–185; 2 Bell's Cases, book 7,
ch. 2, p. 533; *Powles v. Page*, 3 C. B., 16; *Evans v. Drum-
mond*, 4 Esp., 89; 3 Coms., 168–172; *Carter v. Whalley*, 1
Barn. & Ad., 11.  But we are not disposed to hold that a re-
tiring partner remains liable to all persons thereafter dealing
with the continuing partners, though no notice of dissolu-
tion has been given; but are inclined to hold that he only
remains liable to those who had previous dealings with the
firm, and those who knew of the existence of the firm previ-
ously, and made their sales or contracts with and upon the
credit of such firm.  In the case at bar, if the plaintiff had
had no knowledge that there ever had been a firm of Augustus
and *George Covert*, and had sold his coal to Augustus, he
could not afterwards charge the firm of Augustus and *George*
with it, upon discovering that such firm had existed
and was reputed still to exist, if it had been in fact dis-
solved.  In such case, he would have given no credit to the
firm, but the sole credit would have been given to the pur-
chaser; and, as the former partner had in fact retired, and
therefore received no advantage from the purchase, he could

not be held liable therefor. In such case, the retiring partner, as to such creditor, would be no more liable than though he had formerly been a strictly secret or dormant partner, and had retired before the credit had been given to the open partner. Story on Partnership, §§ 159, 160; note 1, § 336; *Pratt v. Page*, 32 Vt., 13; *Holdane v. Butterworth*, 5 Bosw., 1; *City Bank of Brooklyn v. McChesney*, 20 N. Y., 240.

As the evidence in this case shows that the plaintiff had no former dealings with the firm, and did not know of its existence until immediately before the sale was made, he could not recover in this action unless he showed that, previous to making the sale, he had knowledge that such firm was reputed to exist, and that his sale was made on the faith that it continued to exist at the time of the sale. It was therefore important for him to show, *first*, that he was informed that such a firm was reputed to still exist; and *second*, that he sold his coal on the credit of such firm. We are of the opinion that the evidence offered and rejected should have been received for this purpose, and that the offers of evidence which were rejected tended to prove these facts.

If the plaintiff had, in addition to the fact of the previous existence of the firm, shown that the general reputation in Clinton, at the time of the sale, was that the partnership continued between the Coverts, that he made inquiries, and was informed that such reputation prevailed there, and that he sold the coal upon the strength of such information, we are inclined to think he would have been entitled to recover, notwithstanding the dissolution of the partnership, unless respondent showed that he had given a public notice of such dissolution, or that the plaintiff had knowledge from some other source that such partnership had been dissolved, or that he had no knowledge of the fact of such general reputation.

We are not inclined to hold that a party who never had any dealings with or knew of the existence of a firm whilst it was in fact in existence, can recover against a retiring part-

ner, when no notice of the dissolution of the firm has been given, upon mere proof that the remaining member or members of the firm stated to him, at the time of his making sales to them, that such firm had existed and still existed, in the absence of any proof that the retiring partner had done anything or permitted anything to be done which would induce the public to believe that he still remained a member of such firm; but if he knowingly permits a reputation to grow up in the community where the firm has done business, that he still continues to be a member of such firm, and does nothing to correct such reputation, he will be held liable to parties who, acting upon the strength of such reputation, give credit to the firm.

As the appellant offered to show this reputation, and also prove that upon inquiry this reputation was brought to his knowledge, and that he acted upon the fact of such reputation in making the sale of the coal, we are of the opinion that the evidence should have been received, and that it was error to reject the same. 2 Greenl. Ev., § 483; *Bernard v. Torrence*, 5 Gill & Johns., 383–405; *Carlton & Manning v. Ludlow Woolen Mill*, 27 Vt., 496, 498.

We are inclined to hold, both upon principle and authority, that general reputation is not admissible to prove the fact of partnership, nor as corroborative of other evidence to prove such fact; but, as a person who is not in fact a partner, may, by holding himself out as such, render himself liable to parties who deal with the firm on the presumption that the fact exists which his acts tend to evidence, it may be that general reputation in the community where he resides that he is a member of a firm doing business there, especially when such reputation is created by the acts and declarations of the party himself, or even if he have knowledge of such reputation and permit it to exist without any contradiction on his part, may be given in evidence in favor of one who has acted upon the fact that such reputation existed, and given credit to the firm on account

Benjamin vs. Covert, imp.

thereof. But, without resting our opinion in this case upon that theory, we are very clear that where a partnership in fact has been established and become known to the public, and one of the partners retires, giving no notice of his so doing, general reputation in the community where the business of the firm was transacted, and where the retiring partner resides, that the partnership still continues, can be given in evidence by one who thereafter gives credit to the firm upon the strength of such reputation, in order to charge such retiring partner. If a retiring partner would free himself from contracts thereafter made in the name and on the credit of the firm, it is his duty, at the very least, to do nothing and permit nothing to be done which shall tend to prove that he still continues a member thereof.

The general rule is, that he will remain liable to all persons who have had dealings with the firm, until he gives them notice of the dissolution, or until they have in fact notice of such dissolution from some other source. *Young v. Tibbits*, 32 Wis., 79; *Clapp v. Upson*, 12 Wis., 492. As to those who had no dealings with the firm, but knew of its existence whilst the firm was doing business as such, a public notice of such dissolution will be sufficient to relieve the retiring partner as to such parties thereafter doing business with the firm; and to those who neither had dealings with nor knew of the existence of the firm whilst it existed, he will not be liable even though no notice of dissolution of any kind be given, unless he does some act or acts, or permits or suffers acts or things to be done, which would lead such persons, having knowledge thereof, to believe that the firm continued to exist at the time of their dealing with the other partners on the credit of such firm. And, as we have said above, if he knowingly permit it to be generally reputed in the place where he resides, that he still remains a member of the firm, and take no step to deny or counteract such general reputation, such reputation may be received in evidence for the purpose of charging such retiring

partner with a debt contracted by the other members of the firm with one who had knowledge of such reputation and gave credit to the firm on the strength thereof. At all events, such evidence is competent, and must be submitted to the jury, upon the question whether the retiring partner has, since the dissolution, so held himself out as still continuing a member of the firm, as to render himself liable to those dealing with the firm and giving credit to it.

As stated above, we think the instruction asked by the appellant was too broad, and was therefore properly rejected.

For the error in rejecting the evidence offered by the plaintiff, the judgment must be reversed.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.