32　79
92　305

## YOUNG vs. TIBBITTS, impleaded, etc.

PARTNERSHIP: — *What notice of dissolution necessary to bind persons dealing with the firm.*

1. Persons who have had dealings with a partnership are affected with notice of its dissolution, if a statement of the fact that they have dissolved (though informal, and not signed by any member of the firm), has reached them in any way which advised them of the fact, and was sufficient to put them on inquiry.

2. In an action upon a note executed to plaintiff by D. in the firm name of D. & T., after such firm had been dissolved, it was shown that before such note was made, a notice, authorized by the members of the firm (though not subscribed by them), and implying the dissolution of the partnership, had been published in a newspaper which plaintiff was in the habit of reading daily; and, when examined as a witness in his own behalf, plaintiff did not testify that he had not read such

notice.  *Held*, that upon this evidence it was error to refuse an instruction giving the law as above stated.

3. Such error was not cured by charging the jury that if plaintiff "had direct notice" of such dissolution, or "knew of it *in the course of his business*" before the note was made, he could not recover.

4. No formal or precise announcement of the dissolution, either by publication or otherwise, is necessary to bind a dealer with the firm, but knowledge of any fact however acquired, sufficient to put an ordinarily prudent man upon inquiry, will charge them with notice of whatever other facts a reasonable investigation would have disclosed. Per DIXON, C. J.

5. The question how far a jury is bound by by the distinct and positive testimony of an unimpeached witness, discussed *per* DIXON, C. J., but not decided.

APPEAL from the Circuit Court for *Milwaukee* County.

Action upon a promissory note. The complaint alleged that the defendants *Tibbitts* and Dowe were partners in business in Milwaukee, under the firm name of Dowe & Tibbitts, and executed the note in suit to *Young*, in their said firm name, on the 6th of February, 1865. The answer of *Tibbitts* denied the existence of the partnership at the date of executing the note, and alleged that it had been dissolved by mutual consent of the parties prior to November 1, 1864, of which dissolution plaintiff had notice at the time he received the note. The answer further alleged that *Tibbitts* never had any knowledge of the note, or of its existence, until about a year from its date, and that it was executed by Dowe, in the firm name, for his own private account, and without the knowledge or consent of *Tibbitts*.

Plaintiff testified that the note was given him by Dowe personally, and that it grew out of a transaction in wheat between himself and defendants' firm; that he never had any notice either verbal, public, or written of the dissolution of the firm, nor even the slightest idea of its dissolution. Upon cross examination plaintiff testified that he was in the habit of reading the Milwaukee Sentinel daily at the time of the occurrence.

Defendant *Tibbitts* testified that the firm of Dowe & Tibbitts was never organized in writing, and that it dissolved in the fall of 1864, and that he never knew anything about the note in question until six months or a year after its date. Defendant also testified that upon the dissolution of the old firm a new one was formed by taking in one Conkey, the new firm being known as Dowe, Tibbitts & Co.; that when Conkey was taken into the firm, a reporter of the Milwaukee Sentinel was in defendants' office, and was requested to give notice of it, and to alter the advertisement in the paper, and that the following notice appeared in the Sentinel of date October 31, 1864: "CHANGE OF FIRM.—It will be seen by our advertising column that Dowe & Tibbitts have taken Mr. D. C. Conkey into partnership in the marine elevator and coal business. We congratulate the well known firm on the accession of so energetic a business man as Mr. Conkey; together they will make a strong team." It was admitted that no advertisement appeared in the paper, and that the above was the only notice.

The defendant Dowe deposed that the firm was dissolved in January or February, 1865; that the note was signed by him, and was delivered to *Young* on the day of its date; that *Young* asked him for the note, but he objected to giving it, telling *Young* that no such firm as Dowe & Tibbits then existed; that *Young* said it made no difference; that the note was to be used merely as a memorandum, and he would not press its payment; that there was no formal written or printed notice given of the dissolution of the firm, but that they gave oral notice to the members of the firms with whom they had dealings.

The court refused several instructions asked by the defendant *Tibbitts*. The first of these stated in substance that it was " a fact proved in the case " that the firm of Dowe & Tibbitts was dissolved before the giving of the note in suit, there being "no testimony contradicting that of the defendant *Tibbitts*" on that point. Another of these instructions is recited in the opinion. None of the others need be stated.

Verdict and judgment for the plaintiff; and *Tibbitts* appealed.

*Mariner, Smith & Ordway*, for appellant, insisted that notice of the dissolution need not be direct or express, but may be inferred from circumstances. Collyer on Part., § 532. For if in any way notice comes to the party contracting after dissolution, he cannot be said to be contracting on the faith of the partnership. Id., § 530; 3 Kent's Com. (11th ed.), 81, note. The rule as laid down by Chancellor WALWORTH in *Vernon v. Manhattan Co.*, 22 Wend., 192, is, that "to exempt the copartners from liability, the jury must be satisfied that the person with whom the debt was contracted either had actual notice that the copartnership was dissolved, or that facts had actually come to his knowledge sufficient to create a belief that such was the fact." See, also, opinion of Mr. Justice COWEN, same case, 17 Wend., 528; *Mauldin v. Bank*, 2 Ala., 505; *Davis v. Keyes*, 38 N. Y., 94; *Coddington v. Hunt*, 6 Hill, 595; *Whitman v. Leonard*, 3 Pick., 177; *Kirby v. Hewitt*, 26 Barb., 608; *Pitcher v. Barrows*, 17 Pick., 365.

*Emmons & Hamilton*, for respondent.

DIXON, C. J. Whether the first request to charge made by counsel for the defendant *Tibbitts* was correct or not, or should have been granted, we are relieved from deciding, since there was another, the refusal of which was, in our judgment, clearly erroneous, and must result in a new trial. The general rule of law, and its qualifications, applicable where unimpeached witnesses testify distinctly and positively to a fact and are uncontradicted, is thus stated by the court of appeals in *Elwood v. The Western Union Telegraph Co.*, 45 N. Y., 553: "It is undoubtedly the general rule, that where unimpeached witnesses testify distinctly and positively to a fact and are uncontradicted, their testimony should be credited, and have the effect of overcoming a mere presumption. (*Newton v. Pope*, 1 Cow., 110; *Lomer v. Meeker*, 25 N. Y., 361.) But this rule is subject to

many qualifications. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. The witnesses, though unimpeached, may have such an interest in the question at issue as to affect their credibility. The general rules laid down in the books at a time when interest absolutely disqualified a witness, necessarily assumed that the witnesses were disinterested. That qualification must, in the present state of the law, be added. And furthermore, it is often a difficult question to decide when a witness is, in a legal sense, uncontradicted. He may be contradicted by circumstances, as well as by statements of others contrary to his own. In such cases, courts and juries are not bound to refrain from exercising their judgment, and to blindly adopt the statements of the witness, for the simple reason that no other witness has denied them, and that the character of the witness is not impeached."

The other request to instruct, which we think was erroneously refused, was in these words: "It is not legally necessary that a published notice in a newspaper should be given of a dissolution. If notice reaches the dealers with the old firm in any way which advises them of the fact, and which is enough to put them on inquiry, that is enough." It was in evidence by the testimony of the plaintiff himself, that he was in the habit of daily reading the newspaper in which the notice was published showing the formation of the new firm and consequent dissolution of the old. The plaintiff testified that such was his habit at the time that notice appeared. It is true, it was not a formal notice subscribed by the parties, but it was nevertheless authorized by them, and corresponded with the facts as they are now claimed or shown to have been. Had the jury found that the plaintiff saw and read the notice, such as it was, that would have been sufficient to put him upon inquiry. Formal and precise or unequivocal announcement to a dealer with the old firm, either by publication read by him or otherwise, was not neccessary in order to affect him with no-

tice of the dissolution. The rule respecting notice in such cases differs not from that which governs in others. It is, that knowledge of any fact, however informally acquired, such as ought to put an ordinarily cautious and prudent man upon inquiry, will suffice; and the party having such knowledge will be chargeable with notice of whatsoever other facts further reasonable investigation or prosecution of the inquiry would have disclosed. It seems to have been supposed by the court below that the newspaper notice, if brought to the attention of the plaintiff, would have been insufficient to put him upon inquiry at the time he received the note. In this, as already observed, we think the court was mistaken.

But it was furthermore in evidence, by the testimony of the defendant Dowe, that he gave the plaintiff direct and positive notice of the dissolution at the time of executing the note. It is likewise true that the plaintiff as positively denied it; but that was a question of veracity for the jury. With such evidence before the jury, it was the duty of the court to have given the instruction; and there was nothing in the general charge subsequently made which cured the defect. The general charge was in these words : " Now if you believe *Mr. Young* had direct notice, or knew of it in the course of his business, before the note was executed, that the firm of Dowe & Tibbitts was dissolved, and that Mr. Dowe, at the time of executing this note, had no further business connection with this firm, then I don't think the plaintiff could recover in this action. But if you find from the testimony that *Mr. Young* acted upon a well grounded belief that the firm still existed, and had no legal notice, then the question of the existence or nonexistence of the partnership would not affect his rights at that time."

It may be said that the charge correctly submitted and disposed of the question of direct notice, and we are inclined to think that it did; but it clearly excluded the supposition or finding that there could be any other notice, unless it was acquired by the plaintiff in the course of his own business. It

was not in testimony by the plaintiff that he did not read or had no knowledge of the notice published in the newspaper; and other parts of the charge indicate that it was wholly immaterial in the opinion of the court, even if the plaintiff had read or did know the contents of the notice. The jury were told it was "not a notice emanating from the parties;" that the partnership between Dowe and *Tibbitts* "was a private arrangement;" and that "there was no written agreement, and no notice given in the newspapers of the formation of it, and no notice of the dissolution of it, and it was only a dissolution between themselves."

The evidence before the court and jury was such as made the request to instruct pertinent and proper; and the mistake, as has been seen, was not obviated by anything contained in the general charge. If the plaintiff had not seen or read the notice in the newspaper, it was easy for him so to have testified. He did not so testify, and the question of notice acquired through the publication or otherwise, should have been submitted to the jury in terms as requested; and for this error the judgment must be reversed, and a new trial awarded.

*By the Court.*—It is so ordered.