B. HUNT & CO., APPELLANTS, v. COLORADO MILLING AND
ELEVATOR COMPANY, APPELLEES.

1. RESPONSIBILITY OF PARTNERS ON DISSOLUTION OF PARTNERSHIP.—
   An outgoing partner is responsible to those who have had prior
   dealings with his firm for all debts that may be thereafter con-
   tracted by it, unless it be shown that such creditors had actual no-
   tice of the dissolution of the firm.

   ACTUAL NOTICE OF DISSOLUTION OF PARTNERSHIP.—Notice in fact
   of the dissolution of a partnership is all the law requires, and it is
   immaterial by what means that notice is brought to the knowledge
   of dealers, it being sufficient if the information comes to them either
   directly or through some of the channels which the law recognizes
   as legitimate ways of communication.

3. CIRCUMSTANCES EQUIVALENT TO NOTICE IN FACT.—The positive tes-
   timony of the remaining partner, that he notified a former dealer
   of the dissolution of his firm, and that he was doing business alone,
   coupled with proof that bills were thereafter rendered to him by
   the dealer in his own name only, who received checks from him on
   account signed by him in his individual name, and that the dealer's
   agents frequently visited his place of business after the dissolution,
   is equivalent to notice in fact of the dissolution of the partnership.

*Appeal from County Court of Arapahoe County.*

PRIOR to the year 1888, and up to September 1st of that
year, the appellants, Hunt and Dryden, were trading co-
partners in the city of Denver.    On that date the firm was
dissolved by mutual consent.    Prior to the dissolution the
firm had done business with the Elevator Company, and had
bought goods from two of their mills — the Crescent Flour
Mills, and the Roller Mills.    It appeared that after the dis-
solution Hunt continued business at the old stand, and bought
goods of the Elevator Company from the salesman who
represented them.    When they dissolved Hunt and Dryden
attempted to give notice to the persons with whom they had
had prior dealings; they directed postal cards to the Cres-
cent Flour Mills and the Roller Mills, and mailed them in
the Denver office.    The only other evidence of actual notice

to the appellees was that given by Mr. Hunt, who testified that he told Mr. Payne, representing the Crescent Mills, and Mr. Knight, who represented the Roller Mills, that the firm had been dissolved and that he was doing business by himself. This was in a measure controverted by Mr. King (the manager of the Crescent Mills), who denied any knowledge of the dissolution,—by Knight, who contradicted the conversation as given by Hunt,—and by Payne, who stated that he was without recollection upon the subject. As bearing upon the question of the knowledge of the Elevator Company of the dissolution, proof was made that subsequent to September 1, 1888, it rendered its bills to B. Hunt, which, as put in evidence, run—" B. Hunt in account with the Crescent Flour Mills," and—" B. Hunt in account with the Roller Flour Mills." These bills were not controverted nor was any evidence offered tending to show that the company kept its books and accounts or rendered other bills in a different fashion. There were also introduced in evidence divers checks in partial liquidation of accounts rendered, signed by Brasier Hunt, and indorsed by the managers of the two mills. There was no other evidence of importance introduced on either side with reference to this controversy. It was shown that notice of dissolution was published in the " Daily Rocky Mountain News," but there was no evidence that the Elevator Company either took the paper or saw the notice. It transpired that Mr. Payne sold some of the goods for which the action was brought on orders which he took at Mr. Hunt's store, and that payments on account were made to him by the debtor. Neither Payne's nor Knight's relations to the company were disputed. The defendant, David W. Dryden, denied the existence of the copartnership at the date of the sale of the goods. The trial was to the court without a jury, and judgment was rendered against both Hunt and Dryden for $161.94, from which the present appeal was prosecuted.

Messrs. WILLIS B. HERR & H. R. CLISE, for appellants.

Mr. S. D. WALLING, for appellee.

BISSELL, J.   The technical liability of the defendant, Dryden, for the value of the goods sold can only be determined by a proper solution of the inquiry, whether it is apparent that the Elevator Company had notice of the dissolution of the firm prior to the sale of the goods.   The responsibility of the outgoing partner to those who have had prior dealings with his firm, for all debts that may be thereafter contracted by those with whom he was connected, is clearly settled, unless it be shown that those persons were actually notified of the dissolution.   That which is ample to relieve him from all liability as to strangers or persons who had no connection whatever with the old firm would not suffice when the suit is brought by those who have had prior dealings with the copartnership.   Whether what had been done will amount to that notice which the law requires is a mixed question of law and of fact, not always easy of solution.   It is strenuously urged by counsel that the sending of notices through the mail, properly addressed, with very slight corroboration would make satisfactory proof of that actual notice which the law says must be given to prior dealers.   There would be much force in the suggestion if the record neither necessitated nor required an express adjudication of this proposition.   It is true that in *Ramson v. Mack*, 2 Hill 587, the court decided that a notice sent by mail in the town where both parties reside was not proof of notice, even in the case of commercial paper.   But as was said in that case, " the corporate limits of our cities and towns have, I think, less to do with this question than the mail arrangements of the general government and the business relations of our citizens.   Whether mail service is good or not does not depend upon the inquiry whether the person to be charged resides within the same legal district; but upon the question whether the notice may be transmitted by mail," etc.   It is thus evident, even from that case, that the point of inquiry always is— whether or not actual notice may be given in that fashion.

There would hardly seem to be any room for question that dealers might be given notice by mail. It is only a matter of delivery, receipt and proof. But it is a far different matter to hold that the deposit of a notice in the office, addressed to the individual to be notified, would of itself and as in cases of notice to the indorser of commercial paper make proof of that actual notice which the law requires. Under our present system of postal service in towns where a free delivery prevails, it is nearly certain that a letter will reach the person to whom it is addressed if it bear the street and number of his place of business, and it would require but very slight additional proof to so far confirm that presumption as to make it evidence of both the delivery and receipt of the notice. *Austin v. Holland.*, 69 N. Y. 571.

But to give it this force it is essential to show that the notices were addressed not only with the name of the person but also with the number and street of his place of business. That did not appear, and without that proof the link is missing which would require the court, upon the proof, to decide as a matter of law that the actual notice had been given which is indispensable to relieve a retiring partner from subsequent transactions apparently carried on in the partnership name.

But there is other evidence of actual notice, which is enough to relieve Dryden from that technical responsibility for a portion of the debt which otherwise the law would cast upon him. All that is necessary is notice in fact. It is wholly immaterial by what means that notice is brought home to the knowledge of the dealers, or in what form it is given, for no particular method or formality need be observed, according to the force of all the authorities. *Austin v. Holland, supra;* Wade on Notice, § 499; *Young v. Tibbitts*, 32 Wis. 79; *Hier v. Odell*, 18 Hun 314; Collyer on Partnership (sixth edition), § 581; *Reilly et al. v. Smith*, 16 La. Ann. 31; *Mauldin v. The Bank*, 2 Ala. 502. It is enough that the information comes to the dealer either directly or through some of the channels which the law recog-

nizes as legitimate ways of communication. The dealings between the mills and Mr. Hunt were through Payne and Knight, who acted as agents of the company. Payne had repeatedly taken orders for goods, collected money for those sold, and, according to the testimony, sold part of the goods for the price of which this action was brought. He thus stood with reference to the Elevator Company and the Crescent Flour Mills as their representative and agent, and an actual notice to him of Dryden's withdrawal would presumably reach his employers, and would most certainly bind them. *Hier v. Odell, supra; Page et al. v. Brant,* 18 Ill. 37; *Ingalls et al. v. Morgan,* 10 N. Y. 178; *Davis v. Keyes,* 38 N. Y. 94.

It is wholly unnecessary to rely entirely upon the presumption that the principal was fully advised of that which was communicated to the agent. The form of the bills, the signature to the checks and the frequent visits of the agents to the house compel the belief that if the actual managers of the concern were unadvised as to the change of the copartnership, those persons connected with the company who were actually engaged in the transaction of the particular business with Hunt were fully advised as to the situation, and the company would be bound by that knowledge.

This conclusion is not at all in conflict with the rule which has been so often declared by the appellate tribunals of this state,—that they will not interfere with the verdict of a jury or the finding of the court upon questions of fact simply upon a conflict of testimony, or upon a question of the weight and preponderance of the evidence. It stands substantially uncontradicted in the record that Payne was given actual notice of the dissolution of the firm. The absence of a recollection on his part that such a conversation was had does not tend to shake or weaken the absolute testimony given by Mr. Hunt upon this subject. His direct and positive statement standing uncontradicted must be given full credit, unless there be something in the record which tends to overcome or weaken the force of that unimpeached testi-

mony.   *Elwood v. Western Union Telegraph Co.*, 45 N. Y. 549.

To render the judgment entered in this case, the court below must have found that the Elevator Company received no actual notice of the dissolution of the firm.   This finding was not a decision upon conflicting testimony, but was a legal conclusion upon the proof that the notice given was wholly insufficient to charge the Elevator Company.   Since this was error this cause must be reversed and remanded:

*Reversed.*