ROBERTSON LUMBER COMPANY v. CAMERON ANDERSON and Another.[1]

December 29, 1905.

Nos. 14,517—(77).

**Partnership—Statute of Limitation.**

A partial payment made upon a partnership debt, after the dissolution of the firm, will suspend the operation of the statute of limitations as to other partners, in favor of a creditor receiving such payment, who has had dealings with the partnership and has no notice of its dissolution.

**Notice to Corporation.**

Notice to an agent of a corporation, to be notice to such corporation, must be to an agent who is acting within the scope of his authority, and must concern some matter which it is his duty to communicate to his principal.

**Dissolution of Partnership.**

No particular kind of notice is essential to charge the creditor with notice of dissolution of a partnership.

**Question for Jury.**

In this case, payment on a partnership debt was made by one partner to the traveling auditor of the creditor firm. Two general managing agents of that firm, whose authority to receive notice was disputed, had actual notice of the dissolution. Their books contained entries of sales to the firm and of sales to one partner as an individual after the dissolution. It was the admitted duty of the traveling auditor to, and he did, examine these books. *Held*, the question of notice to the firm through all these agents was one of fact for the jury.

[1] Reported in 105 N. W. 972.

Action in the district court for Polk county to recover from defend-ants Cameron Anderson and Kenneth C. Hunter, $301.81, for goods sold. Anderson alone appeared and answered. The case was tried be-fore Watts, J., and a jury, which rendered a verdict in favor of plain-tiff. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant Anderson appealed. Reversed and new trial granted.

*H. A. Bronson* and *D. T. Collins,* for appellant.

*Bosard & Bosard,* for respondent.

JAGGARD, J.

This was an action by the plaintiff and respondent to recover from the defendants Anderson and Hunter, copartners as Anderson & Hunt-er, $301.81, for lumber sold the defendants between July 24 and Octo-ber 5, 1894. The plaintiff, to avoid the bar of the statute of limitations, alleged that defendants paid one dollar on account on November 22, 1900. Defendant Hunter defaulted. Defendant and appellant Ander-son in his answer set up the bar of the statute as to himself. The evi-dence showed his residence in Minnesota for more than six years after the account became due. Accordingly the right of plaintiff to recover depends upon the effect of the payment of one dollar by Hunter, which was clearly proved.

The partnership of defendants was dissolved in April, 1900. On April 12 notice was published. During all the times involved the plain-tiff had its home office at Grafton, and a retail lumber yard at East Grand Forks, Minnesota, in charge of one Nesne, and another at Grand Forks, North Dakota, in charge of one McDonald. Each agent had complete charge of the yard and of the business of the company in each city, respectively. He made sales, extended credits, kept the books, and attended to collections. Both Nesne and McDonald knew of the partnership dissolution and had read published notices thereof. Nesne had a conversation with Anderson with reference to that dissolution. He had previously sold lumber to the firm, and charged the same to the firm account, and on and between April 14, 1900, and January 31, 1901, he sold Anderson in his own name and individually lumber to the amount of $1,076. This account appeared upon the books of the plaintiff at East Grand Forks. Neither of these local agents had ever

had the firm account here sued on for collection. It did not appear upon their books; but both knew of its existence. Wonderlich, to whom Hunter paid one dollar on the firm account, was the traveling auditor for the plaintiff. He checked up accounts and looked after credits, made collections and settlements, and had charge of the collection of the balance of account due from the defendant firm to the plaintiff, here sued on. In examining the accounts in the cities of Grand Forks and East Grand Forks, he found that the account there against Anderson & Hunter was fully paid and that certain accounts against Anderson were charged to him solely and separately. Some of these personal accounts had been started as early as 1897.

The court charged that there could be no recovery if the jury found from the evidence that the partnership was dissolved in the last week of March or first week in April, 1900, if, when the payment of one dollar was made to Wonderlich, while acting as agent or auditor for the plaintiff, he received actual notice or knew that the said partnership had been dissolved. He excluded from the jury any consideration of constructive notice through Wonderlich, or of notice through the agents Nesne and McDonald.

In the language of counsel for the plaintiff, a partial payment made upon a partnership debt after the dissolution of the firm will suspend the operation of the statute of limitations as to other partners in favor of the creditor receiving such payment, who has had dealings with the partnership and has no notice of its dissolution. Whitney v. Reese, 11 Minn. 87 (138); Bryant v. Lord, 19 Minn. 342 (396). And see National Bank of Commerce v. Meader, 40 Minn. 325, 41 N. W. 1043; Sage v. Ensign, 2 Allen, 245; Buxton v. Edwards, 134 Mass. 567; Clement v. Clement, 69 Wis. 599, 35 N. W. 17; Austin v. Bostwick, 9 Conn. 496; Graves v. Merry, 6 Cow. 701; Beardsley v. Hall, 36 Conn. 270.

"A corporation from its nature can in a strict sense have only constructive notice or knowledge of facts." 10 Cyc. 1053, 1054. There is applied to it the ordinary rule that "notice to an agent is notice to the principal. The theory * * * is that if the principal had in person transacted the business he would have acquired the knowledge or received the notice the agent acquires and receives, and therefore is chargeable with such knowledge and notice, * * * and upon gen-

96 M.—34

eral principles of public policy it is and must be presumed that the agent communicates to the principal the facts of which he acquires knowledge or notice." Birmingham v. Louisville, (Ala.) 13 South. 112; Wade, Notice, § 672; Sooy v. State, 41 N. J. L. 394; Cox v. Pearce, 112 N. Y. 637, 20 N. E. 566; 3 Current Law, 89.

If notice to an agent is relied upon, it must be to an agent who is acting within the scope of his authority, and must concern some matter which it is his duty to communicate to his principal. Elliott, Priv. Corp. (3d Ed.) § 534. Clark & Marshall, Priv. Corp. § 718; Mechem, Ag. § 718; Fulton v. New York, 4 Paige, 127; Hargadine McKettrick v. Krug (Neb.) 96 N. W. 286; Modern Woodmen v. Colman, 68 Neb. 660, 94 N. W. 814; 40 Cent. Dig. col. 1521, § 670. Such notice is imputed to the principal, even though never communicated to him. Cox v. Pearce, supra; Ingalls v. Morgan, 10 N. Y. 178. The powers of a managing agent are necessarily broad. Tiffany, Ag. 216.

In the case at bar actual notice was given, according to their own testimony, to the plaintiff's agents, Nesne and McDonald. We are of opinion that the facts previously stated do not show that the transaction was as a matter of law beyond the scope of their authority, nor that as a matter of law it was outside of their duties to communicate such facts to the corporation itself. This is not the case of a corporation operating a complicated and extensive business, with a large number of agents having restricted duties unrelated to the transaction in issue, and residing at places remote from each other, from the home office of the corporation, and from the place of origin of the controverted matter. The extent and character of the authority of the general and managing agents in this case, their knowledge of the outstanding indebtedness, the course of their dealings with the partnership before dissolution and with the defendant Anderson individually afterward, their proximity to the office where the goods from which the indebtedness arose were originally sold, make it unreasonable and unjust to hold that actual notice to them of the dissolution of the partnership must be entirely disregarded and given no legal effect. The proper relief to be granted the defendant is a new trial. For the jury must determine the question of fact whether or not it was within the disputed authority of Nesne and McDonald to receive such notice. 40 Cent. Dig. "Principal and Agent,"

col. 1597, § 724; col. 1190, § 420, et seq.; Mechem, Ag. § 287; Deford v. Reynolds, 36 Pa. St. 325; Davis v. Keyes, 38 N. Y. 94.

The appeal questions the propriety of the charge with respect to the notice of dissolution to Wonderlich. In the absence of specific requests for more extended and different charges in that regard on behalf of defendant, we would be unwilling to reverse the case on this account. In connection with a new trial, however, attention is called to the fact that while there is authority to the effect that actual notice of dissolution must be brought home to the persons in the habit of dealing with the firm (Collyer, Part. 533), "the distinction [between actual and constructive notice] * * * is not of any great practical importance, and, perhaps, strictly the latter is to be regarded as much actual notice as the former. In either event, it is well settled that the principal may be bound by the one as fully as by the other. The rule as to what will constitute constructive notice may be said to be that wherever a party has knowledge of any fact sufficient to put a prudent man upon an inquiry which, if prosecuted with ordinary diligence, would lead to actual notice, he will be charged with the knowledge which might have been acquired by such diligence. The presumption that he would have acquired such knowledge is not, however, indisputable, and it is always open to the party to show that he used such diligence without avail." Mechem, Ag. § 724. No particular kind of notice is therefore essential. It is not necessary that the parties in interest should be distinctly apprised and know at the time that what is claimed to be notice was intended as such notice. Notice may be inferred from circumstances from which knowledge of the dissolution ought to be inferred. Davis v. Keyes, supra; Deford v. Reynolds, supra; Laird v. Ivens, 45 Tex. 621; Young v. Tibbitts, 32 Wis. 79, 84.

The question whether plaintiff received notice through Wonderlich should have been submitted to the jury. Wade, Notice, § 10, 38 Cent. Dig. col. 1575, § 663.

Order reversed and a new trial granted.