## MILLER *v.* PFEIFFER ET AL.

[No. 20,872.   Filed February 27, 1907.]

1. PARTNERSHIP.—*Dissolution.*—*Notice.*—It is not necessary for a partner, upon dissolution of the partnership, to give actual, personal notice to customers, in order to escape liability for subsequent dealings by the continuing partner, mere knowledge of the dissolution, or the legal equivalent of such knowledge, being sufficient notice.   p. 221.

2. SAME. — *Dissolution.*—*Notice.*—*Principal and Agent.*—Notice to the general agent of a buying partnership of the dissolution of the selling partnership is sufficient notice to such buying partnership of such dissolution.   p. 222.

3. SAME.—*Subsequent Dealings with Single Partner.*—*Effect.*— Where the plaintiffs traded with a partnership for a certain period, after which one member continued such trading in his own name, the plaintiffs are required, in order to hold the former partner liable, where he ceases to participate in the business, to make inquiry as to whether such partnership still exists.   p. 222.

4. PLEADING. — *Complaint.* — *Sufficiency.*—*Amendment.*—*Appeal and Error.*—Where the complaint appears bad, and a reversal is ordered upon other grounds, the Supreme Court may direct that the demurrer thereto be sustained with leave to amend. p. 222.

From Whitley Circuit Court; *Joseph W. Adair,* Judge.

Action by Christian F. Pfeiffer and others against Henry W. Miller.   From a judgment for plaintiffs, defendant appeals.   Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Reversed.*

*Marshall, McNagny & Clugston,* for appellant.

*Andrew A. Adams,* for appellees.

GILLETT, J.—Appellees, as members of the firm of C. F. Pfeiffer & Sons, live stock commission dealers, doing business at East Buffalo, New York, sought to charge appellant, as a partner of the alleged firm of H. W. Miller & Son, for a balance due on account of a $5,000 draft sent by appellees to said alleged firm.

It appears from the evidence that in January, 1903, appellant and his son, Orb L. Miller (since deceased), opened a correspondence with appellees relative to the sale of live stock. The letter by which said correspondence was initiated was signed "H. W. Miller & Son," and was written on a letter-head which bore the superscription, "H. W. Miller & Son, Dealers and Shippers of Live Stock. Columbia City, Indiana." Appellant was a farmer, but had for many years been a shipper of live stock to eastern markets. His son, according to the testimony, was aiding in the prosecution of the latter business, but it can scarcely be claimed from the evidence that there was a partnership in fact between them. The son, however, had procured some stationery with the superscription aforesaid on it, and appellant acquiesced in the use of such stationery in his business correspondence. Between January and May, 1903, appellant made a number of shipments of live stock to appellees, and, without particularizing, it may be said that during said time he permitted himself to be held out to appellees as a partner of his son, conducting business under the name of H. W. Miller & Son. During the latter month, however, Orb L. Miller purchased a meat market in Columbia City, and about that time he procured letter-heads having thereon the superscription, "O. L. Miller, Shipper of all Kinds of Live Stock and Dealer in Fresh and Salt Meat. Columbia City, Indiana." There is some dispute as to whether appellant took any part in the business subsequently, but there was uncontradicted evidence that Orb L. Miller afterwards made twenty-three shipments to appellees in his own name. All of his telegrams and letters sent to them thereafter, at least so far as they were produced upon the trial, were sent over his own signature, and the letters were upon his individual letter-heads. Appellees uniformly made their drafts payable to H. W. Miller & Son, but after May, 1903, such drafts were indorsed by Orb L. Miller, and the proceeds thereof were passed to his

account at the bank.   In January, 1903, appellees opened an account with H. W. Miller & Son, and the account was carried in this manner throughout.   Their books, however, show that in a large number of instances, after May, 1903, shipments were made in the name of Orb L. Miller.   Appellees claim that they thus separated the business pursuant to the direction of the younger Miller.   There was evidence that in the fall of 1903, appellees' agent, Vaughn, who seems to have had a very general authority from them, particularly in the sale and purchase of live stock, was informed by Orb L. Miller that his father was no longer buying with him.   The draft which gave rise to this controversy was sent out on January 16, 1904, pursuant to a telegraphic request from Orb L. Miller for an advancement, and, while the draft was sent in the name of H. W. Miller & Son, it was in fact indorsed by a bookkeeper of Orb L. Miller, and he received the proceeds.

In charging the jury, the court, over the exception of appellant, gave the following instruction:   "The general ground of liability of a person as partner, who is not so in fact, is that he has held himself out as such partner to the world, or permitted others to do so, and that by reason thereof he is estopped from denying that he is a partner, as against persons who have in good faith dealt with the firm or with the person so held out as a member of it.   The only rule recognized by the law is an absolute requirement that the retiring partner shall give proper notice of his withdrawal, and, failing to do so from whatever cause, must suffer the consequence; and this notice as contemplated by the law is not such inferences as might arise, by one ceasing to hold himself as a partner, but by giving affirmative notice of the dissolution or his withdrawal from the membership of the firm.   And in case of persons having former dealings in good faith with the firm, the notice to such persons must be actual, personal notice."

Counsel for appellees seeks to justify the foregoing instruction by a reference to certain decisions of this court, in which it was indicated that, as against former customers of a firm, it is the duty of a retiring member to give actual notice of the dissolution. It will, however, upon reflection, at once be perceived that the law does not require a man to do a vain and useless thing, and that if a customer has knowledge of the dissolution, or the legal equivalent of such knowledge, he is in no position to complain that he did not receive formal notice. *Barfoot* v. *Goodall* (1811), 3 Camp. 146; *Hart* v. *Alexander* (1837), 2 M. & W. 483; *Holtgreve* v. *Wintker* (1877), 85 Ill. 470; *Young* v. *Tibbitts* (1873), 32 Wis. 79; *Ach & Co.* v. *Barnes & Co.* (1899), 107 Ky. 219, 53 S. W. 293. Notice to Vaughn, in the course of his employment, was equivalent

2.   to actual notice to appellees. *Webb* v. *John Hancock, etc., Ins. Co.* (1904), 162 Ind. 616, 66 L. R. A. 632; *Field* v. *Campbell* (1905), 164 Ind. 389, 108 Am. St. 301; *Ach & Co.* v. *Barnes & Co., supra.* The instruction was therefore erroneous. So far from its being proper for the court to instruct as it did, we are of opinion that had there been no evidence of any participation by

3.   appellant in the business or its affairs after May, 1903, the court should rather, since what is notice is a question of law, have instructed that the circumstances were such as to require appellees to apply to appellant to ascertain whether a partnership still existed. *Barfoot* v. *Goodall, supra; Young* v. *Tibbetts, supra.*

A question is raised as to the sufficiency of the complaint, but, as the points involved do not go to the merits, and as it appears to us wholly improbable that appellees'

4.   counsel will care to experiment with so doubtful a pleading, we think it best, in connection with a reversal of the judgment and the ordering of a new trial, to direct, although without prejudice to appellees, that the demurrer to their complaint be sustained, with leave to amend.

It is so ordered.