PAINE et al. v. TRUSTEES OF MACALES-
TER COLLEGE et al.

(District Court, D. Minnesota, Third Division.
May 27, 1925. Judgment Amended June
30, 1925.)

1. Principal and agent ⊜178(1)—Notice to custodian of securities held not notice to their owner.

A trust company was custodian of securi-ties owned by a college, acted as its agent in collection of interest thereon, and from time to time sold securities to it. The trustees of the college ordered the purchase of certain bonds listed for sale by the trust company and paid for them, supposing them to be owned by the company. They were in fact owned by plain-tiffs, but the trust company was authorized to sell them, and on notice of their sale they were delivered to it by messenger, who received in payment a cashier's check, good when given, but which was not presented for payment until two days later, and after the trust company had been closed. The bonds were deposited by the trust company with the other securities of the college. Held, that the trust company was merely a ministerial agent of the college, and that the college was not charged with notice of the transaction by which the bonds were pur-chased by the company, or of any infirmity in the check given in payment therefor, which af-fected its title to the bonds.

2. Principal and agent ⊜178(1)—When no-tice to agent is notice to principal stated.

In order that notice to an agent shall con-stitute notice to the principal, it must be of facts within the scope of the agency, so that it becomes the agent's duty to act on them or communicate them to his principal.

At Law. Action by William A. Paine and others, doing business under the firm name and style of Paine, Webber & Co., against the Trustees of Macalester College and others. On motion by defendant trus-tees for judgment non obstante verdicto. Judgment vacated and set aside, and new trial granted.

Selover, Schultz, Mansfield & Bryan, of Minneapolis, Minn., for plaintiffs.

Bishop H. & Paul D. Schriber, of St. Paul, Minn., for defendant.

JOHN B. SANBORN, District Judge. [1] The plaintiffs, Paine, Webber & Co., are and were a partnership engaged in sell-ing securities. The Capital Trust & Sav-ings Bank is a trust company of Minnesota, and was, up to May 3d of last year, at which time it was closed by the superintend-ent of banks, engaged in business as such. The Trustees of Macalester College is and was a corporation engaged in maintaining an educational institution, and will be referred to as "the college." For a considerable length of time prior to May 1, 1924, the col-lege had been purchasing securities from the trust company and depositing them with it as custodian.

At one time John R. Mitchell was treas-urer of Macalester College and also chair-man of the board of directors of the trust company. He resigned in 1921, and Mr. Everett Kirk succeeded him. While Mr. Mitchell was treasurer, he found it conven-ient to have the trust department of the trust company assist in the collection of in-terest on the investments made for the col-lege, and to have the securities deposited in the safe deposit vaults of the trust com-pany, where they would be readily acces-sible. When Mr. Kirk became treasurer continued the arrangement Mr. Mitchell made relative to the care of the securities

The college paid for the rent of the box in which its securities were kept. Mr. Wil-lis Otis was the trust officer of the trust company. He and his secretary did the nec-essary work in connection with the listing and safe-keeping of the securities, cutting and collecting interest coupons, and depos-iting the moneys received in the Capital Na-tional Bank to the credit of the college. For convenience, the securities were final-ly moved out of the safe deposit boxes and kept in a separate compartment in the bank vault on the floor above.

Aside from the collection of interest upon the securities, records of such securities were kept, and Mr. Otis had authority to sign checks for Mr. Kirk for the purchase of investments selected by the trustees of the college. The greater part of the securities had been purchased from the trust company, and its compensation consisted in the difference between what it had paid for such securities and the amount it sold them for to the college.

From time to time the college had funds for investment, but instead of purchasing securities it turned over the money to the trust company and took "interim certificates." These, in effect, stated that money had been deposited and that the college might select later on such securities as it desired, and that the securities, when so selected, should bear interest from the date of the interim certificate. On the 1st day of May, 1924, the college had $24,000 of these interim certificates. During the month of April there had been discussion by its trustees as to the advisability of the college carrying these interim certificates, and it was suggested that they were not proper investments for its endowment fund.

Mr. Bigelow, the president of the board of the college, knew that the trust company was heavily loaded down with farm mortgages, which were not salable and many of which were in default, and that it would require shortly a considerable amount of money to enable it to continue to do business. He suggested to Mr. Kirk, the treasurer, that the interim certificates be turned into actual securities. Mr. Kirk went to the trust company the morning of May 1st and got its bond list. Upon this list were $12,000 of Redwood county bonds, payable to bearer, and $12,000 of Northern States Power Company bonds. The list was submitted to Mr. Bigelow, and he advised the purchase of the Redwood county bonds and the Northern States Power Company bonds. Mr. Kirk notified the bond department of the trust company that the college would take these bonds, and would surrender its interim certificates. On the afternoon of May 1st the certificates were surrendered, and the trust company delivered to Mr. Otis, its trust officer, $12,000 of Redwood county bonds for the college, and these bonds were placed in the vault with its other securities.

The college supposed that these bonds belonged to the trust company, and had no reason to believe otherwise. The bonds actually belonged, at the time they were ordered by the college, to Paine, Webber & Co. As soon as the college had selected these bonds, Mr. Matteson, head of the bond department of the trust company, notified Paine, Webber & Co. that the trust company would buy the bonds. Between 2 and 3 o'clock in the afternoon of May 1st, the bonds were delivered to the trust company by a messenger of Paine, Webber & Co., and he received in payment therefor a cashier's check. The check was not cashed at the bank, as might have been done, but he took it to Minneapolis and delivered it to Paine, Webber & Co. It was deposited in due course, and would have been paid on Saturday, May 3d, but for the fact that the superintendent of banks of the state of Minnesota had taken charge of the trust company and closed its doors.

After the closing of the trust company, Paine, Webber & Co. ascertained what had become of the Redwood county bonds and made a demand therefor upon the college, which was refused. This action was commenced to determine who was entitled to their possession. At the close of the plaintiffs' case, the action was dismissed as to the Capital Trust & Savings Bank and the superintendent of banks. At the close of the testimony the Trustees of Macalester College made a motion for a directed verdict, which was denied. The jury brought in a verdict for the plaintiffs. This verdict, in effect, determined that the trust company was such an agent for the defendant that its knowledge that the bonds were purchased with a check which might not be paid was chargeable to the college, and that therefore the college was not a bona fide owner and holder of these bonds for value without notice, and that the title to them was in the plaintiffs.

The verdict cannot be sustained. The trust company was nothing more than a mere custodian and bookkeeper for the college. The acts which it performed were ministerial in character. It was not at liberty to exercise any discretion with reference to the investments of the college. It could not either buy or sell securities for it. When securities were delivered to Mr. Otis for the college for record and safe-keeping, they were delivered to the college as fully and completely as though delivered to Mr. Kirk and removed from the premises.

The relation between the college and the trust company, so far as the purchase of these bonds were concerned, was that of vendor and vendee. After the purchase was

made, the bonds were left with the trust company in the usual way. There was no obligation on the part of the custodian to advise the college that the bonds had not in fact been owned by the trust company, but had been purchased from Paine, Webber & Co., and that a cashier's check had been given therefor, and no such information was given. So far as the record shows, the check given in payment of the bonds was good when issued, and would have been paid any time up to the morning the bank closed. It is not necessary in this case to determine whether or not there was any infirmity in the title of the Capital Trust & Savings Bank to the bonds in question.

[2] The theory of the plaintiff that the trust company was such an agent that notice to it was notice to the college is not tenable. If the college had authorized the trust company to purchase bonds for it, the question would be a different one; but its only authority was in connection with the listing and safe-keeping of the bonds in question. Paine, Webber & Co. delivered these negotiable bonds to the trust company to dispose of in any way it saw fit. The trust company sold and delivered them to the college. The college had no knowledge that they had not been paid for, and no reason to believe that at any time they had belonged to any one other than the trust company. To require the college to return these bonds, under the circumstances, would be to deprive it unjustly of the advantage of its own foresight.

In connection with this matter, it must be kept in mind that notice to an agent, in order to be notice to the principal, must relate to facts so material for the purpose of the agency as to make it the agent's duty to communicate notice to his principal. 2 C. J. 866.

"Notice to the agent, when it is the duty of the agent to act upon such notice, or to communicate it to his principal for the proper discharge of his duty as agent, is notice to the principal; and applies to agents of corporations as well as of others." Langenheim v. Anschutz-Bradberry Co., 2 Pa. Super. Ct. 285, 291.

"The general rule is that notice to an agent is notice to his principal; but the rule does not apply where the agent is acting in a merely ministerial capacity. When so acting, the agent does not act as a substitute for the principal, nor is there imposed upon the agent the duty of communicating to his principal the knowledge thus ac-

quired." Royle Mining Co., v. Fidelity, etc., Co., 161 Mo. App. 185, 142 S. W. 438.

"If notice to an agent is relied upon, it must be to an agent who is acting within the scope of his authority, and must concern some matter which it is his duty to communicate to his principal." Robertson Lumber Co. v. Anderson, 96 Minn. 527, 105 N. W. 972.

Perhaps the best statement is found in Trentor v. Pothen, 46 Minn. 298, 49 N. W. 129, 24 Am. St. Rep. 225, in which the court said:

"The rule which imputes to the principal the knowledge possessed by the agent applies only to cases where the knowledge is possessed by an agent within the scope of whose authority the subject-matter lies; in other words, the knowledge or notice must come to an agent who has authority to deal in reference to those matters which the knowledge or notice affects. The facts of which the agent had notice must be within the scope of the agency, so that it becomes his duty to act upon them or communicate them to his principal. As it is the rule that whether the principal is bound by contracts entered into by the agent depends upon the nature and extent of the agency, so does the effect upon the principal of notice to the agent depend upon the same conditions. Hence, in order to determine whether the knowledge of the agent should be imputed to the principal, it becomes of primary importance to ascertain the exact scope and extent of the agency."

The situation here would have been the same if the college had paid cash to the trust company for the bonds in question, and Mr. Kirk had taken them and put them in his own office safe. There was no duty on the part of the trust company to impart to the college the information which it had with reference to the purchase of these bonds by it of Paine, Webber & Co., and no reason to expect that it would do so. The college was the bona fide owner and holder of these bonds, under the undisputed evidence in this case.

After hearing the arguments of counsel, and upon due consideration, it is ordered that said motion for judgment be and the same is hereby granted. A stay for the period of 30 days is granted to plaintiffs for the purpose of perfecting an appeal.

Order Amending Order for Judgment.

The order heretofore entered on the 27th day of May, 1925, in the above-entitled

cause, is hereby amended and modified so as to read as follows:

"After hearing the arguments of counsel, and upon due consideration, it is ordered that the judgment heretofore entered in this cause be and the same is hereby vacated and set aside, and a new trial granted."

It is so ordered.

The reason for this amendment is that under the federal practice judgment notwithstanding the verdict cannot be granted, and that all the court can do is to vacate the judgment entered on the verdict and grant a new trial. Young, Administratrix, v. Central Railroad Co. of New Jersey, 232 U. S. 602, 34 St. Ct. 451, 58. L. Ed. 750. Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.