The opinion of the court was delivered by
Breaux, J.
The plaintiffs claimed damages for the death of their son, Charles M. Bland, aged about twenty-two years and unmarried. He was electrician and lineman; the witnesses state, of the defendant company.
The latter operates a belt line, electric railway, in the city of Shreveport. The electricity is supplied through a trolley wire hanging over the roadbed, by means of suspension wires fastened to poles standing on each side of the road. The height of these poles *1058 is about twenty-five or thirty feet and their diameter eight or ten inches. On a straight line these poles are planted at a depth of about five feet, on curves about five feet and a half.
It became necessary to take down a guy wire attached to one of these poles, on a curve.
The superintendent of the company with the lineman, the late Charles Bland, went to the pole to remove the wire. The former suggested to the latter to cut the wire from the tree. “No,” was the latter’s reply for the reason that “the wire will remain attached to the pole and will be in the way.”
The superintendent also offered to climb the pole and himself do-the work required. The lineman being more active and nimble went up after the soundness of the pole had been tested. Reaching the point at which the.guy wire was attached to the pole he clipped the wire with his pliers; immediately after, the pole commenced to give way with the young man and fell on him.
He died about seven hours afterward from the effects of the fall.
It is in evidence that the pole was two feet in the ground; that the ground was wet at the time as it had rained the previous day.
The defendant pleads that the accident was caused by the lineman’s want of care and caution; that he was aware of the danger of the employment.
The jury found a verdict for the plaintiffs in the sum of twenty-five hundred dollars. ,After an ineffeeual attempt to obtain a new trial from the verdict, the defendant appeals from the judgment.
Before the guy wire was removed the offending pole was safe; it remains, none the less, that without this wire it was entirely unsafe. We have seen that moving the wire was a necessity, rendered so by the fact that the guy tree was on the right of way of another railroad. The removal was ordered by the defendant company, under whose order the two, its superintendent and lineman, acted. The company’s order was to take down the wire and take it out of the way.
It is well settled in order to support an action for personal injuries two things must concur, the want of proper care and caution on the part of the defendant and no fault on the part of the plaintiff.
If the defendant was notified of the vice of construction at the place the accident occurred and failed to make needful repairs within a reasonable time, it became responsible for injuries resulting from the fall of the pole.
*1059 It is but fair to the present management to state that it does not appear of record that they had any knowledge of the defect. It is in evidence, however, that in 1893 the one who was lineman of the company, reported to the superintendent that this pole was weak, threatening and that it ueeded resetting.
These employees are no longer in the service of the company.
The corporation itself has not changed,, and it is bound by the knowledge of its employees, at the time, had. Notice to the agent was notice to the principal. We are informed by the testimony of the witness Huddleston, that the superintendent’s reply was (when he was notified) that the pole would be reset later, in dry weather; it was in wet weather that he gave the information and was directed to attach the guy wire. If this witness stated correctly, and we have no reason to think that he has not, the resetting should not have been indefinitely postponed as it was.
Having reached this conclusion in regard to the defendant, we are brought to the plea of contributory negligence urged by the defendant against any right of plaintiffs to recover damages.
The inquiry here is whether the danger was concealed or the surrounding condition of things such, as to warn the lineman who was injured?
The proposition does not admit of discussion; that while it is the general duty of a master to exercise needful care and caution to pre - vent the exposure of his employee to great risks, the employee on the other hand must exercise ordinary diligence in guarding against injuries.
The guy wire was one hundred and twenty feet in length from the top of the pole, where it was attached to the trunk of the guy tree.
Had he cut the guy wire at the china tree that served as a guy post he would have been out of all danger. At the same time it is evident that the work would have been only half done. It would not have been workmanlike to leave that many feet of wire hanging from the pole. Moreover, there were leaks in the electric wires. The pole was marked as one of the “ leaky ” poles. The plaintiffs assert that in wet weather the wire might become charged and be dangerous to any one coming in contact with it, and that it was prudent and proper to cut off the electric fluid.
Be this as it may, it was most assuredly not unreasonable on the part of the lineman to lessen the work by cutting the guy wire at the pole as he did, instead of cutting it at the guy tree.
*1060 In the second place (having concluded to cut the wire from the pole), it is urged by the defendant that there was negligence in not having used the appliances in his possession and under his control belonging to the compauy. These appliances, we are informed, were a “block and fall ” and “ come alongs.” The evidence as to the use of these appliances is conflicting as to whether they are intended for removing wires. Several of the witnesses confine their use principally to pulling up the slack in the wire or letting off the slack gradually. Be all that as it may, not one of the witnesses has sought to prove that it was at all unnsual or unreasonable to climb the pole and cut the wire as was done. Knowledge of the danger is not shown, nor is it evident that there was a want of ordinary care and prudence to avoid the usual dangers to which linemen are exposed. It is in the line of their duty to climb these poles to attach or detach wires and in performing such work as is needful in keeping up the system of which they in part have charge. They are provided with spurs for the purpose and have other appliances to enable them to climb and dispatch the work.
A lineman is not unreasonable or imprudent who takes it for granted that a pole was planted at the usual depth. The evidence that the accident could not have occurred if the pole had been planted at the usual depth, is uncontradieted. The fact that after the accident it was planted some five feet and a half in depth and that all guy wires are since dispensed with is significant and leads to the unavoidable conclusion, that if it had been properly put up in the first place the accident would not have occurred.
Generally the office of the guy wires, we are informed, is to steady the post and prevent its movement or vibration. If the post bends or gives away in a curve, particularly, the trolley wires no longer remain plumb and the trolley wheel leaves the wire. We think in this case the guy wires performed double duty: to support the pole, also to lessen its vibration. It became evident after the fall that it was a support of the pole, but this support was not apparent before the accident, for the reason that nothing indicated that the planting was too shallow for it to be secure without the gay wires.
The post stood at a point of the curve upon which there was great strain, it is true. The force, however, was not greater than an ordinary post could withstand.
The sufferer was not guilty of contributory negligence as the act of *1061 climbing such poles is not unusual with linemen. The employee assumes the ordinary “ risks of the employment which are apparent and which he has the opportunity to detect.” Buswell, Sec. 204.
Here the risks of the employment were not apparent and the employee had no opportunity to detect the vice of construction. The superintendent who was present, and the victim of the accident did not, in the least, suspect the unsafe condition of the pole in question.
There are two items of damages claimed:
1. The alleged pain and suffering.
2. Compensation for the loss of the support and assistance to plaintiffs, if he had not been fatally injured. As to the first there is no moneyed standard of measurement. In a possible view of such eases no amount would be excessive and sufficient compensation.
But in fixing the amount the ability to pay and precedents applying must be considered.
As to the second, one of the plaintiff is between seventy-five and eighty years of age, and the other about sixty.
The deceased was getting sixty dollars a month wages. There is uncertainty as to the amount of 'contribution that a young man may make to the support of his parents. It may be considerable, or it may be very little, without violating the demand of duty.
The damages are fixed at eighteen hundred dollars.
It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount allowed from two thousand five hundred dollars and interest to eighteen hundred dollars and interest thereon from March 17, 1896.
As amended, the judgment is affirmed at appellee’s costs.