ROY E. HAYS & CO. v. PIERSON*
(No. 1167; March 24, 1925; 234 Pac. 494.)

PARTNERSHIP—TENANTS IN COMMON—MORTGAGES—BANKS & BANK-
ING—KNOWLEDGE ACQUIRED BY OFFICER IMPUTED TO BANK—NOTICE
OF PRIOR OWNERSHIP.

1. The presumption from the execution by one of two partners
   to the other of a half interest in land, afterwards patent-
   ed to grantor, is that the land was intended to be held by
   the two as tenants in common, and not as partnership
   property, in the absence of anything in the deed indicat-
   ing the contrary.

2. Though land standing in name of an individual be the
   property of a firm of which he is a member, his individual
   mortgage thereof to secure a loan made to him individu-
   ally is good against partnership creditors; mortgagee not
   having actual or constructive notice of partnership in-
   terest.

3. Knowledge acquired by the officer of a bank having charge
   of its loans, though while he was engaged in his general
   duties in connection with such loans, that land standing in
   name of an individual was property of a firm, not being
   material or important to the then interests of the bank,
   is not imputed to the bank, where, after such officer ceased
   to be connected with the bank, it, through another officer,
   made a loan to the record title holder of the land indi-
   vidually on the security of his individual mortgage of the
   land.

4. Knowledge, acquired by the president of a bank casually
   and out of his line of duty, and when it was of no im-
   portance to the bank, that partnership owned land stand-
   ing in name of individual, is not imputed to the bank,
   where thereafter through its cashier it made a loan to
   the record title holder individually on his mortgage of
   the land.

5. Subject to exceptions, knowledge, acquired by the cashier
   of a bank before he had charge of its loans, that land
   standing in the name of an individual belonged to a
   partnership, is notice to the bank, where thereafter he,
   having been intrusted with such branch of the business,
   made a loan to the record owner of the land individual
   on his mortgage of the land, if the cashier still had in
   mind the previous information.

6.  That the cashier of a bank, when he made a loan to the record owner of land individually on the security of his mortgage thereof, had in mind the information which he acquired at least 13 months before, and before he had charge of the loans, that the land belonged to a partnership, so as to charge the bank with notice thereof, will not be presumed, but must be proved by the party whose interest it is to show the fact.

7.  Temporary and partial use by a partnership of land, record title to which was in an individual, and which use had ceased before he mortgaged it for individual loans, *held* not notice to the mortgagees of ownership by the firm.

8.  It was not enough to charge mortgagees with notice that land standing of record in the name of the individual mortgagor, P., belonged to a partnership of which he was a member, that he had previously closed out the partnership account in the bank, which was one of the mortgagees, that the mortgagees had made a careful investigation of the title (power of attorney executed by the other partner to P., mentioning no particular land), and that one of the mortgagees, to the knowledge of the other, took a mortgage on an undivided half interest in the land; P., while claiming the whole property, having insisted that that was enough security.

\*NOTE—See Headnotes—(1) 30 Cyc. p. 435; (2) 27 Cyc. p. 1184; 30 Cyc. p. 549; (3) 2 C. J. p. 863; 7 C. J. p. 532 (1926 Anno.); (4) 7 C. J. p. 532; (5) 7 C. J. p. 533 (1926 Anno.); (6) 2 C. J. p. 929; 7 C. J. p. 533 (1926 Anno.); (7) 27 Cyc. p. 1187; 30 Cyc. p. 549; (8) 27 Cyc. p. 1186.

ERROR to District Court, Fremont County; CYRUS O. BROWN, Judge.

Action by W. S. Pierson and another against Roy E. Hays and Co. & others to cancel certain mortgages given by Fred Primm to defendants in error, enjoin foreclosure thereof, have the mortgage property decreed to be the property of a partnership, and made subject to the payment of debts of said partnership. There was a judgment for plaintiffs and certain defendants bring error.

*George H. Paul, Hagens & Murane* and *S. S. Combs* for plaintiffs in error.

The common law does not recognize community interests in real estate through partnerships; 20 R. C. L. 56; Riddle v. Whitehill, 135 U. S. 621; Adams v. Church, (Ore.) 70 Pac. 1037. In Wyoming the right is conferred by statute, 4179 C. S. where purchased with partnership assets; Arnold v. Wainright, 6 Minn. 538. Title held in joint names of several owners is neither notice nor evidence of the partnership between them; Thompson v. Bowman, 18 L. ed. 736; joint tenancy is presumed; Alkire v. Kahla, (Ill.) 17 N. E. 693, 20 R. C. L. 855; 1 Lindley 329; unless the deed indicates other wise; Wheatley v. Calhoun, (Va.) 37 Am. Dec. 656, 30 Cyc. 433. Declarations of an owner before obtaining title are inadmissible against the subsequent owner; Wallace v. Miner, 6 Ohio 366; Gilbert v. Odum, (Tex.) 7 S. W. 510; Harrell v. Culpepper, 47 Ga. 635; Noyes v. Moriss, 108 Mass. 396. Primm held under an Indian patent; conveyance of homestead prior to final proof is void. Waisner v. Waisner, (Wyo.) 89 Pac. 580. A conveyance received without notice of partnership interests is superior to claims of partnership creditors, 30 Cyc. 537; Mayer v. Clark, 40 Ala. 259; Sickman v. Abernathy, (Colo.) 231 Pac. 447; Thorpe v. Co., (Minn.) 108 N. W. 940; Fairbanks v. Welshans, (Neb.) 75 N. W. 865, 20 R. C. L. 278. Members of a partnership have a right to have firm assets applied to firm debts, 28 R. C. L. 273. Upon dissolution of partnership, creditors have a lien on the firm's assets; Menough v. Whitehill, 52 N. Y. 146; Rainey v. Nance, 54 Ill. 29, 30 Cyc. 538; unless the record shows interest of a partnership in land a purchaser from a member holding title, requires title good as against partnership creditors seeking the cancellation of the transfer; 2 Pom. Eq. 592, even if issued by a partnership; McCarthy v. Nicrosi, 47 Am. Rep. 418; O'Neal v. Prestwood, (Ala.) 45 So. 251; King v. Porter, (W. Va.) 71 S. E. 202; Roussain v. Norton, (Minn.) 55 N. W. 747. The rule as to con-

structive notice is stated by 2 Pm. Eq. 671-2. As to notice
by agent see Constant v. Univ., (N. Y.) 19 N. E. 631; Story
on Agency 140; Thompson v. Swan, (Tex.) 35 S. W. 828;
Algier v. Keith, 105 Fed. 105; Ins. Co. v. Halsey, (N. Y.)
59 Am. Dec. 478; Kirklin v. Ass'n., (Tenn.) 60 S. W. 149,
31 Cyc. 1593. Plaintiffs took the mortgage in good faith,
12 R. C. L. 576; plaintiffs were creditors of Primm. An
extension of time on an antecedent debt is good considera-
tion, 27 Cyc. 1192; Watts v. Corner, (Tex.) 27 S. W. 1087;
DeMey v. Defer, (Mich.) 61 N. W. 524; Alston v. Marshall,
(Ala.) 20 So. 850. A simple contract creditor cannot
maintain a creditor's bill, 5 Pom. Eq. 305; 39 Cyc. 537,
23 R. C. L. 278; if a counter claim be founded on a written
instrument, it must be annexed, 5675 C. S.; a judgment is
a written instrument, 23 Cyc. 1516. Jurisdictional facts
must be pleaded to maintain a creditor's bill; Young v.
Wright, 52 Cal. 410; State v. Lagoni, (Mont.) 76 Pac.
1044; allegations of the existing debt must show its exist-
ence at the time of the alleged fraudulent conveyance, 20
Cyc. 729, if conveyance antedates judgment, judgment is
not prima facie evidence of antecedent debt, 20 Cyc. 2087,
and cases cited. The transcript of testimony taken in a
former action was not admissible, nor was judge's notes,
McGeoch v. Carlson, (Wis.) 71 N. W. 116; Elberfeldt v.
Waite, (Wis.) 48 N. W. 525, 5 Enc. of Ev. 950; extrinsic
evidence of the correctness of the testimony is necessary;
People v. Carty, (Cal.) 19 Pac. 491. The testimony of
Longnecker was inadmissible as a deposition 5844-46 C. S.,
it must be shown that the testimony was read over to the
witness after being transcribed; L. & N. R. Co. v. Carter,
66 S. W. 508; Mauler v. U. S., 57 Fed. 490. The issues and
parties must be the same in both cases, Madden v. Steg-
man, (Kan.) 127 Pac. 524; Eesley Co. v. Co., (Mich.) 137
N. W. 663; London Co. v. Cereal Co., (Ill.) 195 N. E. 1064;
Pattie v. Co., (Ore.) 96 Pac. 1106. The Longnecker evi-
dence did not show a partnership, nor that Lawrence was
a privy in estate with Primm; it was inadmissible, 15 R.

C. L. 503; Schuler v. Ford, (Ida.) 80 Pac. 219; the Court
erred in nullifying plaintiff's mortgages, 20 Cyc. 819;
Coons v. Lemieu, (Minn.) 59 N. W. 977; Printup v. Turner,
65 Ga. 71; Baker v. Lee, (La.) 21 So. 588; Weeks v. Mas-
coma, 58 N. H. 101.

*A. C. Allen* and *M. C. Burk* for defendants in error.

This is an action to set aside a conveyance of property
which belonged to a partnership and embraced in a trust
for a specific purpose. A judgment is merely incidental,
but not an instrument upon which the action is based, and
it is unnecessary to set it out or annex it to the pleading.
Defendants took the property with knowledge that it was
partnership property. Under this theory of the case
which is supported by the evidence, it is needless to dis-
cuss the question of constructive notice, or of pleading a
judgment. Whenever a party has obtained knowledge, it
is unnecessary to invoke the legal conception of notice; 1
Pom. Eq. 1136; Cleveland Co. v. Moore, 82 N. E. 52-84 N.
E. 540. A purchaser of partnership property with knowl-
edge of its character takes it on the responsibility of the
seller; Whitney v. Dewey, 158 Fed. 385. When a partner-
ship is dissolved and the equity of a partner remains,
creditors are recognized as having an equitable lien on
firm assets. Williams v. Louis, 17 N. E. 262, 20 R. C. L.
1083; 4179 C. S. does not alter the rule; it was unnecessary
to set out the judgment 10 Std. Enc. Pro. 92; Eller v.
Lacey, 36 N. E. 1088; a surviving partner is obligated to
carry out contracts of the firm; 20 R. C. L. 1002; Primm's
attempt to convey while a bankrupt was a nullity; 4206
C. S. Plaintiffs in error assume that the admission of the
record of the hearing where Primm testified, was upon the
proposition that it was in the nature of a deposition taken
in a former case, which is error; it was admitted upon the
ground that it contained declarations and admissions tend-
ing to prove the partnership of Lawrence & Primm, which
was one of the issues in this case, and also that plaintiff in

error had knowledge of such partnership, and that the property here involved was partnership property; also that the partnership and the creditor were both insolvent; it was properly admitted; Benjamin v. Richards Co., 37 N. E. 362; Huntsinger v. Hoffer, 11 N. E. 463; a surviving partner of an insolvent firm has no power to dispose of partnership property, nor bind the firm to pay a personal debt with partnership property; Clift v. Moses, 20 N. E. 392; 4206 C. S.; Sweet v. Morrison, 8 N. E. 396; 20 R. C. L. 998; after dissolution a partner has no authority to bind the partnership, even for a pre-existing debt; 20 R. C. L. 973; Wilson v. Forder, 20 O. St. 89; Palmer v. Dodge, 4 O. St. 21; 4206 C. S. a partnership is not bound by the act of a surviving partner in the disposition of partnership; Page v. Thomas, 1 N. E. 79; Lee v. Suller, 1 N. E. 854; Rausboth v. Baily, 56 Pac. 1036, a mortgage made without consideration is void; Clift v. Moses, supra; 20 R. C. L. 972; 4206 C. S. Land purchased for and treated as partnership property will be treated as belonging to the partnership irrespective of the character of the conveyance, 20 R. C. L. 854; 4179 C. S.; a finding on conflicting evidence thereto will not be disturbed; VanSickle v. Schenck, 20 N. E. 381; Baum v. Thomas, 50 N. E. 357; 2 Pom. Eq. 762. One claiming to be a bona fide purchaser must come into equity with clean hands, 2 Pom. Eq. 753; notice sufficient to prevent the purchase from being bona fide may inhere in the very form and kind of conveyance, thus one taking under a quit-claim deed, but this conclusion is rejected by other authorities; Peck v. Ayres, 100 Pac. 283; Knox v. Doughty, 81 Kans. 138; 105 Pac. 537; Hudson v. Herman, 107 Pac. 35.

*George H. Paul, Hagens & Murane* and *S. S. Combs* in reply.

The Primm testimony was inadmissible, 1st because Primm had parted with his interests; 2nd it was not properly authenticated. We admitted the exceptions to the

rule requiring a judgment as a pre-requisite to action to conceal a fraudulent conveyance, but the exceptions do not apply here, 12 R. C. L. 614; the creditor must allege and show that he was a creditor at the time the conveyance was made and that he was injured. A mere allegation of judgment without setting out or annexing a copy is insuffifficient. If the Primm evidence was admitted on the ground of admissions or declarations against interests, such were incompetent and inadmissible being made at a time when declarant had no interest.

BLUME, Justice.

This is an action brought by W. S. Pierson and Dorothy Pierson, plaintiffs below and defendants in error here, against Roy E. Hays & Co., The Riverton State Bank, and another. The object of the action was, in brief, to have the court cancel certain mortgages given by Fred Primm to defendants in error on Lot 16 in Sec. 2 and Lots 13 and 14 in Section 10, T. 1 S. of R. 4e, Fremont County, Wyoming, to enjoin the attempted foreclosure under one of said mortgages, to declare said land to be the property of the partnership of Lawrence & Primm, and to subject it to the payment of a certain judgment theretofore rendered in favor of respondents for an indebtedness of said partnership. A preliminary injunction was issued to stop such foreclosure, a trial on the merits was had to the court without the intervention of a jury, and on June 22, 1922, the court entered judgment declaring the said land to be the property of the partnership of Lawrence & Primm, cancelling the mortgages aforesaid, holding that plaintiffs are judgment creditors of said firm and as such entitled to have said land subjected to the payment of this judgment and making the injunction theretofore issued in the cause permanent. From this judgment so rendered the said Roy E. Hays & Co., and the Riverton State Bank, plaintiffs in error herein, have brought proceedings in error.

The said partnership was composed of one Arthur Lawrence and Fred Primm, and it conducted its business in Fremont County. Two mortgages are in controversy here, both executed by said Fred Primm personally on the aforementioned lands as if his own. One of these was made to Roy E. Hays & Co. on July 20, 1920, the description in which was corrected by a correction mortgage of March 11, 1921. This mortgage covers only an undivided one-half interest in said land. The original of this mortgage was filed for record on July 21, 1920, and the correction mortgage on March 11, 1921. The second of these mortgages in controversy here was made to said bank on November 10, 1920, filed for record on November 12, 1920, Breniman, the cashier, acting for the bank. The indebtedness of respondents seems to have arisen by reason of the fact that, commencing with 1918, W. S. Pierson was employed by said partnership to care for some cattle of said partnership on shares. The patent to the land hereinbefore described was issued by the Government of the United States to Fred Primm on April 15, 1918, filed for record March 9, 1921. When this land was purchased or entered does not appear. On February 4, 1918, said Fred Primm executed to Arthur Lawrence a quit-claim deed to an undivided one-half interest in and to Lot 16 in Section 2, and Lot 7 in Section 10, in Twp. 1, S. of Range 4, E. of the Wind River Meridian. This deed was kept at least a portion of the time in a safety deposit box in said bank, but neither of the plaintiffs in error are shown to have had any knowledge of its existence. It was not filed for record until September 20, 1921. What relation, if any, Lot 7 in Section 10 above mentioned has to the land in controversy does not appear; Lot 16 above mentioned alone seems to be a part of the premises contained in the mortgages to the appellants herein. In the spring of 1918 Arthur Lawrence, who was a British subject, left Fremont County, joined the army in the World War, and was killed about October 1 of that year. After he had left, the part-

nership business was conducted by Fred Primm alone. Before his departure, however, and on February 4, 1918, Lawrence had executed a power of attorney to Primm "to take charge of and manage my interest in the partnership now existing between myself and the said Fred Primm, which consists of an interest in the Legal Tender Saloon of Riverton, in real estate, live stock, oil locations, ranch and live stock business, and all other business in which the said Fred Primm and myself are interested jointly," and giving full power to Primm to do all necessary things. At that time the partners owned what was called the "Crowheart Ranch," evidently some distance from the lands in controversy, and some cattle, the headquarters for which seem to have been on said ranch. An account was carried by the partnership in the Riverton State Bank. Some mortgages appear to have been executed at different times to said bank and to other parties on said cattle and on said Crowheart Ranch, but the land for which Primm held said patents was never mortgaged except by the mortgages here in controversy. The partnership affairs evidently became involved and the mortgages on the chattels as well as the Crowheart Ranch were foreclosed in the summer of 1920, and at that time the partnership apparently had no property left unless it be the property in controversy. The account of the partnership in the bank was closed on November 14, 1919, and whatever business was left to be done for and on behalf of the partnership was then conducted by said Fred Primm without keeping, apparently, a separate account of it for and on behalf of said partnership, of which fact the cashier of said appellant bank was aware. The cattle of said partnership were wintered, during the winter of 1919-1920, at and around the lands in controversy. The exact time when they were taken from said land does not appear, but it would seem to have been in the spring of 1920. No other use appears to have been made of said land by said partnership. It was occupied by said· Fred Primm during the summer of

1920, although the manner of his occupancy does not clearly appear. He seems to have had a tent on the land, in which he was living, had some chickens which he cared for, and apparently had the intention at that time to make permanent improvements upon the land.

M. J. Martin was the vice-president of said bank during 1917, 1918, and up to October 1st, 1919, when he severed his connection with that institution. He was manager and apparently had charge of all of the loans made. He testified that Fred Primm and Arthur Lawrence talked with him at various times about their affairs, including times when loans were made to them, in which they both stated that they held an equal interest in everything they owned, that they were in partnership in the land business, and "in all other dealings of every kind and nature;" that some of these talks were had in the presence of A. J. Cunningham, the president of the bank, and W. F. Breniman, the cashier; that he and said president and cashier talked this fact over a number of times; and that the bank always considered the land in controversy to be a part of the partnership property. The conversations with, and statements, to, Mr. Cunningham and Mr. Breniman are not fixed as to time. The talks which the witness had with said partners when they were together must have been before March 1st, 1918, about which time Lawrence joined the army. Cunningham and Breninam both deny any of such conversations with, or statements to them, and the latter testified that at the time he took the mortgage for said bank in controversy, he had no knowledge whatever that said land was partnership property. Mrs. Carberry, the former wife of Arthur Lawrence, testified that she had a talk with both of said partners in which they stated that they owned the land "fifty-fifty" and that they were "in partnership in everything that they had." The members of the firm of Roy E. Hays & Co. testified that Primm claimed said land as his own and that they had no knowledge of anything to the contrary. It seems that Fred

Primm, during the existence of said partnership, owned some property which he had inherited, which was not a part of the said partnership-property, and that Arthur Lawrence also owned some lots in Riverton which were not a part of the property of said partnership, but it is not altogether certain whether such Riverton property was in his own name or in the name of his wife.

1.   We are not prepared to say that it appears as clearly as counsel for respondents seem to think that the land in controversy in this case was in fact partnership property. There is no evidence in the record from which a legitimate inference can be drawn that the property was paid for by partnership funds.   The claim of counsel that this is indicated by the fact that a one-half interest to part of this property was deeded to Lawrence by Primm on February 4, 1918, prior to the issuance of the patent for the land, seems to us to be devoid of force.   If land is deeded to one member of a partnership or to the several members without any statement in the deed that such grantee or grantees hold the lands as the property of the firm, the law presumes that the ownership is in the individual grantee or grantees.   30 Cyc. 435.   And the presumption accordingly arising from the deed aforesaid is that the lands were intended to be held by Primm and Lawrence as tenants in common and not as partnership property.   The books of the firm, introduced in evidence, if competent as such, contain an inventory of the Crowheart Ranch and of the personal property thereon, but not of the land in question. The use made of the land by the partnership was temporary only, not exclusive, and as will appear in the further discussion of this opinion, is not a matter of great weight in determining whether said land was partnership-property.   Consequently about the only evidence upon which an affirmative holding in that respect could be based is the testimony of M. J. Martin and Mrs. Carberry.   Whether such testimony is competent for that purpose, or, if competent, whether it is sufficient to show such ownership,

need not be determined, for the reason that the case may be disposed of in considering as to whether or not the plaintiffs in error in this case had knowledge of or must be charged with knowledge of the fact that the lands in controversy belonged to the partnership; in other words, whether or not appellants are purchasers in good faith. Counsel for respondents claim that such knowledge is shown, first, by the testimony of Martin, insofar as the bank is concerned; second, by the use of said land mentioned previously, and third, by other circumstances to which we shall refer somewhat later.

It is claimed that knowledge must be imputed to the bank by reason of the knowledge, not alone of Martin, the former vice-president of the bank, but also by reason of the knowledge of A. J. Cunningham, president, as well as that of W. F. Breniman, cashier. The mortgage to the bank here in controversy, made on November 10, 1920, was taken on behalf of the said bank by W. F. Breniman, and it is claimed by counsel for the appellants that no knowledge can be imputed to the bank except what knowledge W. F. Breniman acquired during the transaction of taking said mortgage. We shall return to this point somewhat later, but it does not quite meet the contention of counsel for the respondents. That contention is, it seems, though made without citation of authorities, that the knowledge acquired by Martin while he was vice-president of the bank, engaged in transacting the loan business of said corporation, is knowledge which must be imputed to the bank, evidently as of the time when that knowledge was acquired and continuously thereafter. If this is true, then whether or not W. F. Breniman had knowledge that said land was partnership property at the time when he took the mortgage in question becomes wholly immaterial. Let us, then, investigate that point. It is no doubt true that in a number of cases a bank or other corporation, being once charged with notice of the character of a transaction, continues to be affected by such notice, whatever

changes may occur in the personnel of its working force. In other words, if notice to or knowledge of a corporate officer is such as to be imputable to the corporation, the subsequent death, discharge, removal, termination of office or the like, without any official communication to the corporation, does not affect the force of the imputation of notice. Fletcher, Ency. of Corp., § 2226; Mechem on Agency, (2nd Ed.) § 1813; Thompson on Corp., (2nd Ed.) § 1654. The cases which have dealt directly with this principle are not many, and are as follows: Birmingham T. Co. v. Bank, 99 Ala. 379, 13 So. 112, 20 L. R. A. 600; U. S. National Bank v. Forstedt, 64 Neb. 855, 90 N. W. 919; Mechanic's Bank v. Seton, 1 Pet. (U. S.) 299, 7 L. Ed. 152; Curtis v. Crawford, County, 118 Fed. 390; 56 C. C. A. 174; Baird v. R. Co., 64 App. Div. 14, 71 N. Y. S. 734; Loring v. Brodie, 134 Mass. 453; Constam v. Haley, 206 Fed. 260; 124 C. C. A. 128; Bland v. Shreveport Belt Ry. Co., 48 La. Ann. 1057, 20 So. 284, 36 L. R. A. 114. Contra: Gt. Western R. Co. v. Wheeler, 20 Mich. 419.

In Curtis v. Crawford County, supra, it was held that the lien of a bank upon its stock given by statute for any indebtedness to it from the stockholder is subject to the lien of a pledgee of such stock where the indebtedness of the bank was contracted subsequent to the pledge and after the bank had notice of it. The case of Birmingham T. Co. v. Bank, supra, is a similar case. The case of Mechanics Bank v. Seton, supra, rules that a bank under its charter has no lien for debts of a trustee on stock held in trust with the knowledge of the board of directors. In Loring v. Brodie, supra, it was held that if a cashier of a bank receives securities on a loan from the bank to a trustee, with knowledge that the securities belong to a trust, the bank is affected with the knowledge of its cashier, and is put upon inquiry, as to whether the trustee has authority to pledge the securities, and that this knowledge continues to be imputed to the bank although new loans, renewals of the first, are made. In U. S. National Bank v.

Forstedt, supra, it was held that a bank must be charged with notice of usury contained in a note taken for the bank by previous officers. Baird v. Railroad Co., supra, holds that notice of the competency of a servant given to proper officers is notice to the corporation though the officers to whom the notice was given died subsequently. Bland v. Railway Co., supra, is a similar case, the question involved there being notice of defects in the wires of the company. In Caustam v. Haley, supra, knowledge of a collecting agent, acquired as to insolvency of a debtor, was imputed to the principal, so as to make him liable for the return of money subsequently collected from the insolvent debtor by himself. It will be noticed that in all of these cases the knowledge acquired by the officer or agent was of interest and importance to the principal at the very time when such knowledge was obtained, so that the latter had some duty to perform or was bound to shape his conduct thereafter accordingly. Was the knowledge acquired by Martin in this case of the same character as that involved in the foregoing cases? It is said that the rule that notice to, or knowledge of, an agent is imputed to his principal is not applicable unless such notice or knowledge has reference to business in which the agent is engaged under authority from the principal. 2 C. J. 863; Fletcher, supra, Sec. 2218. This statement is undoubtedly correct, except as to the modification necessary in certain cases where the same agent acts for the principal in a subsequent transaction, as hereinafter mentioned, and it may be easily applied in cases where an agent is engaged in a line or department of the principal's business in which such notice, or knowledge, is of no importance; that is to say, where the line of business in which the agent is engaged is not such as would ordinarily cause him, in order to perform his part of the principal's business properly, to act pursuant to such knowledge or notice. But the application of the test is not so clear when the notice or knowledge is brought home to an agent who at the time

thereof is continuously engaged in the very department where such notice or knowledge might at some time become of importance to the principal. Courts have attempted to describe the circumstances under which notice or knowledge is imputed to the principal in various ways. Thus it is said that (1) the knowledge acquired by an agent must be material to the business of the principal; (2) that it must be such as he should communicate to the principal. Authorities to this effect are: Mechem, supra, sec. 1833; Fletcher, supra, Sec. 2218; Rudolph v. Farmer's Supp. Co., 131 Va. 305, 108 S. E. 638; Ry. Co. v. Sears (Tex. Com. App.) 210 S. W. 684; Korn v. Ry. Co., 125 Fed. 897, 62 C. C. A. 417, 63 L. R. A. 872; Day v. Wamsley, 33 Ind. 145; Bramble v. Henderson, 41 S. W. 575, 19 Ky. L. Rep. 692; Robertson Lumber Co. v. Anderson, 96 Minn. 527, 105 N. W. 972. Again, (3) it is said that the knowledge must be acquired by the agent in the *very* business in which he is engaged. In Alabama Western R. Co. v. Bush, 182 Ala. 113, 62 So. 89, the court said:

"In other words, an agent's notice or knowledge is not notice to his principal, unless it is with respect to the *very* matter which the agent is employed to transact for the principal."

In Congar v. Ry. Co., 24 Wis. 157, 160, (1) Am. Rep. 164) it was said:

"Such notice, to be binding upon the principal, must be notice to the agent when acting within the scope of his agency, and must relate to the business, or as most of the authorities have it, the *very* business, in which he is engaged, or is represented as being engaged, by authority of his principal."

To the same effect see Warren v. Hay, 74 N. H. 355; 68 A. 193; Hoggardine etc. Co. v. Krug, 2 Neb. Unoff, 52, 96 N. W. 286; Thompson, supra, Sec. 1647; Fletcher, supra, Sec. 2222.

Again the courts say (4) that in order that notice or knowledge of an agent may be imputed to the principal, it must not be such as is acquired in a mere casual way. In Morawitz on Private Corporations, 2nd Ed. Sec. 540c, b and c, it is said:

"Knowledge casually acquired by an agent must be distinguished from a notice given with a design of notifying the principal by an agent who has authority to receive the notice on behalf of the principal. * * * Knowledge of a fact casually acquired by an agent does not affect the principal with notice of the fact like an express notice served upon an authorized agent. Knowledge casually acquired by an agent is not strictly speaking notice to a principal. It merely affects the validity of those transactions in which the agent having the knowledge acts for and represents the principal."

See also Willard v. Denise, 50 N. J. Eq. 482, 26 Atl. 29, 35 Am. St. Rep. 788. In Merchants National Bank v. Clark, 139 N. Y. 314, 318, 34 N. E. 910, 36 Am. St. Rep. 710, it was said:

"It is essential that the knowledge to be attributed to the plaintiff should have been acquired by its officer not casually, and through his individual relations to the other parties, but in an official capacity and because of a necessity for him to inquire and to know the facts in behalf of the bank."

None of these cases cited deal with facts at all like those in the case at bar, but they serve to show, we think, that unless the information received by the agent is material or

important to the *then* interests of the principal, without reference as to what might possibly happen in the future, it will not be imputed to the principal, except in some cases as will hereafter be shown, where the same agent acts for the principal in a transaction where such knowledge becomes of real importance to the latter and affects the transaction in which the agent is then engaged. True, we may take it for granted, from the evidence, that Martin had complete authority in making loans for the bank, and that at the time he received the information testified to by him, he was engaged in his general duties in connection with such loans. But should that be a sufficient basis for holding that all knowledge thus generally acquired should be imputed to the bank, and continue to be so imputed when at some time in the future a transaction arises as to some specific loan in connection with which such knowledge is important? Did he acquire such information in the *very* business in which he was engaged? Mechem, supra, section 1812, deals with this particular point. He says:

"Suppose an agent is employed for a period to buy cattle for his principal. While so employed he receives information concerning cattle of A. At that time it is not his duty, and he does not expect then or ever to buy the cattle of A for his principal, and he does not know and has no reason to believe that the principal then or ever expects to buy the cattle of A, either in person or through some agent. If, notwithstanding this, the principal should, either in person or through some other agent, buy the cattle of A, would he be affected with notice of the information which his agent so received? It is assumed that he would not be."

We agree with the conclusion of the learned author. Knowledge of agents is imputed to corporations, when the former act within the scope of their authority, on the

grounds of public policy, and to hold otherwise would mean that corporations could seldom, if ever, be held responsible at all. But a corporation cannot be held to possess all the information which its agents possess, and knowledge should not be imputed to it, when to do so would go beyond the point of fairness. At the time that Martin received his information to which he testified, he was not dealing with reference to the land in controversy. He had no reason to assume that the bank would ever acquire a mortgage against it. The knowledge which he then acquired was not material to the then interests of the bank, and of no importance to it at that time. He was not employed for the purpose of gathering general information as to titles in the neighborhood. It was not his duty to communicate such knowledge, which he thus casually acquired while he was acting for the bank in other transactions. It can hardly be claimed that it would be fair to put the burden on a bank that deals with a large number of customers to bear in mind, through its officers, all that may have been stated by its customers at one time or other to the agent in charge of loans about what property they own or do not own. If knowledge thus casually acquired by officers of a bank from time to time in regard to property interests of customers of the principal, were all imputed and continue to be imputed to the principal, it would, we fear, be altogether unsafe for any bank to do business. Registration laws are provided for the specific purpose of furnishing and preserving evidence in regard to ownership of land. It would have been easy for the partnership in this case, if in fact the property in controversy here was partnership property, to have placed documents of record in Fremont County which would have conveyed knowledge of that fact to the world. Not even the deed to the one-half interest in part of the land given by Primm to Lawrence was put of record until long after the mortgages in controversy were given. We do not think that it would be fair to impute Martin's knowl-

edge to the bank, when he did not act for it in the subsequent transaction in which that knowledge was of importance.

What we have said in relation to the knowledge of Martin applies equally as well to the knowledge of A. J. Cunningham, the president of the bank, since he did not act for the bank when the mortgage in controversy was taken. But additional reasons exist why his knowledge, which Martin says he acquired, should not be imputed to the bank. He made only occasional trips to Riverton, was neither in active management of the bank, nor of its loan department. That was Martin's duty. Whatever knowledge Cunningham, therefore, acquired, was acquired casually and out of his line of duty. The authorities are abundant, holding that a corporation should not under like circumstances be charged with the knowledge thus acquired by an agent. Bank v. Cushman, 121 Mass. 490; Montclair B. & L. Ass'n. v. Miller, 93 N. J. Eq. 653, 117 Atl. 140; Bank v. Sneed, 97 Tenn. 120, 36 S. W. 716, 34 L. R. A. 274, 56 Am. St. Rep. 788; National Bank v. Feeney, 9 So. Dak. 550, 70 N. W. 874, 46 L. R. A. 732; Hatch v. Ferguson, 66 Fed. 668, 14 C. C. A. 41; Louisville Tr. Co. v. R. Co., 75 Fed. 433, 22 C. C. A. 378; Casco National Bank v. Clark, 139 N. Y. 307, 34 N. E. 908, 36 Am. St. Rep. 705; Satterfield v. Malone, (C. C.) 35 Fed. 445; McCalmont v. Lanning, 154 Fed. 353, 84 C. C. A. 138.

We must pass then to consider the knowledge which is claimed to have been possessed by W. F. Breniman, who acted for and on behalf of the bank in taking the note and mortgage in question. It is held in a number of cases that notice to bind the principal must be received by the agent while engaged in the particular transaction to which the information relates, and that notice to the agent in a prior disconnected transaction, although for the same principal, will not charge the latter. 2 C. J. 866; Pomeroy on Equity, 3rd Ed., § 671. But the more generally accepted rule is that notice to or knowledge of an agent entrusted with

the management of a business, or a particular branch of a business, is notice to and knowledge of the principal in transactions conducted by such agent acting for the principal within the scope of his authority, whether the knowledge of such agent was acquired in the course of the particular dealing or on some prior occasion. The exceptions to such rule are stated by Mecham, supra, Sec. 1813, to be as follows: (1) Where such knowledge is such that it is the agent's duty not to disclose it (2) When the agent's relations to the subject matter are so adverse as to practically destroy the relation of agency, and (3) where the person claiming the benefit of the notice, or those whom he represents, colluded with the agent to cheat or defraud the principal. These exceptions are not, however, involved in this case. Authorities sustaining the foregoing general rule are: Pomeroy, supra, § 672; Mechem, supra, Sec. 1808; Fletcher, supra, § 2223; 2 C. J. 866, 867; Note 3 L. R. A. N. S. 444; Note 21 Eng. Rul Cas. 844; Note Ann. Cas. 1912 D, page 95.

When the transaction in question closely follows and is intimately connected with a prior transaction in which the agent was also engaged and in which he acquired material information, or where it is clear from the evidence that the information obtained by the agent in a former transaction, or on a former occasion, was so precise and definite, or so shortly prior to the subsequent transaction, that it is or must be presumed to be present in his mind and memory while engaged in such subsequent transaction, the courts will not require any evidence of the existence of such knowledge on the part of the agent during the later time. Pomeroy, supra, Sec. 672. But courts will presume forgetfulness unless the occurrence was so recent as to make it incredible. Spielman v. Kliest, 36 N. J. Eq. 199; Slattery v. Schwannecke, 118 N. Y. 548; 23 N. E. 922. And, generally speaking, the rule is firmly established that the burden of proof of the continued existence of such knowledge lies upon the party in whose interest it is to

show that fact.  Pomeroy, supra, Sec. 672; 2 C. J. 929;
Mechem, supra, Sec. 1809; Guaranty Trust Co. v. Koehler,
195 Fed. 669, 115 C. C. A. 475; Constant v. University, 111
N. Y. 604; 19 N. E. 631, 2 L. R. A. 734, 7 A. S. R. 769,
In Pomeroy, supra, Sec. 672, it was said:

"In order that the information obtained by an agent
may be a constructive notice to his principal in any given
transaction, it must be present to the agent's mind and
memory while he is engaged in the transaction which is
sought to be affected.  This is universally true.  *  *  *
If the agent acquired the information in a former and in-
dependent transaction, then it is prima facie presumed
that he does not retain it present to his mind and memory
while engaged in the subsequent transaction in behalf of
a principal whom it is sought to charge with notice."

In Securities Company v. Shepherd, 78 Miss. 217, 234,
28 So. 842, 845, the court said:

"It is beyond dispute that the utmost limit to which the
courts have gone in the line of present inquiry in order to
affect the principal by the antecedent knowledge of the
agent is to show by 'clear and satisfactory proof' that the
antecedent knowledge was present in his mind while ne-
gotiating the new transaction."

In the case at bar, whatever knowledge Breniman pos-
sessed was acquired in conversations which he had with
or in the presence of Martin, while the latter was still
connected with the bank, that is to say, at least thirteen
months prior to the time that the mortgage to the bank in
controversy was given.  In as much as Arthur Lawrence
left Riverton in the spring of 1918, and in as much as the
conversations testified to by Martin probably took place
before that time, the knowledge which Breniman acquired,
if any, was in all likelihood so acquired more than two and
a half years prior to November, 1920.  In the following

cases proof was required that the agent retained prior
knowledge within his memory, and we indicate in bracket
the approximate time that had elapsed between the time
of the acquisition of such knowledge and the occurrence
of a subsequent transaction which was claimed to be af-
fected thereby: Guaranty Trust Co. v. Koehler, 195 Fed.
669, 115 C. C. A. 475 (14 months); Day v. Wamsley, 33
Ind. 145 (7 months); Morrison v. Bausmer, 32 Grat. (73
Va.)·225 (12 months); Constant v. Rochester University,
111 N. Y. 604, 19 N. E. 631, 2 L. R. A. 734, 7 A. S. R. 769,
734 (11 months); Stennett v. Ins. Co., 68 Iowa 674, 28 N.
W. 12 (6 months); Gregg v. Baldwin, 9 N. D. 515, 84 N.
W. 373 (3 months); Red River etc. Co. v. Smith,·7 N. D.
236, 74 N. W. 194 (3 years).

From these cases it clearly appears that the court can-
not presume that the knowledge which Breniman may
have acquired at the time testified to by Martin was re-
tained in his mind or memory. He denied that any such
information was imparted to him, and there was no evi-
dence of any kind which showed that his testimony was
not true, and we are therefore constrained to come to the
conclusion that the testimony of Martin has no force or
effect in showing that the bank at the time that it took its
mortgage on November 10, 1920, knew that the lands in-
cluded in the mortgage belonged to the partnership of
Lawrence & Primm.

2.   We come then to the question as to what effect the
use of the land in controversy had in conveying knowl-
edge to the appellants that it was partnership property.
We must in the first place bear in mind some general prin-
ciples regarding possession and use. Such possession, to
be notice to others, must be actual, open, distinct, notori-
ous and exclusive as regards the vendor. A joint occu-
pancy with the vendor will not avail, for in that event the
possession would be at most equivocal. Pomeroy, supra,
Sec. 620; O'Neal v. Prestwood, 153 Ala. 443, 45 So. 25.

Again it is said by Pomeroy, supra, in section 622, as follows:

"In order that any kind of possession, whether actual and visible, or simply constructive, or consisting in the rightful receipt of rents and profits, may put a purchaser upon an inquiry, and operate as a constructive notice, it must exist at the time of the transaction by which his rights and interests are created. A possession which had ended before, or which did not commence until after, the sale to him was made, or the conveyance or encumbrance was executed, could not affect him with any constructive notice."

The cases that deal with the question as to what effect the use of property by the partnership has in showing it to belong to such partnership may well be taken into consideration here. In 30 Cyc. 445, it is stated that such use does not rebut the presumption that land, the title of which stands in the name of an individual, belongs to him. Bates on Partnership, Sec. 286, states that the mere use of property is weak evidence of an intent to hold the property for the purposes of the partnership. In the case of Clark v. Lyster, 155 Fed. 513, 84 C. C. A. 27, it was said:

"Whether and how far real property is partnership assets depends upon the intention or agreement of the parties. * * * American and English cases very generally hold that real estate not purchased with partnership funds does not become partnership property, though used for partnership purposes, unless there is some agreement that it shall be so considered. * * *. A mere agreement to use real property for partnership purposes is not sufficient to convert it into partnership stock. There must be some evidence of further agreement to make it partnership property."

To the same effect are Holmes v. Self, 79 Ky. 297; Hatchett v. Blanton, 72 Ala. 423; Rapier v. Paper Co., 64

Ala. 330; Humes v. Higman et al., 145 Ala. 215, 40 So. 128; Blakeslee v. Blakeslee, 265 Ill. 48, 106 N. E. 470; Taber-Prang Art Co. v. Durant, 189 Mass. 173, 75 N. E. 221; Driffey v. Maxey, 58 Tex. 210; Hardin v. Dodge, 46 App. Div. 416, 61 N. Y. S. 753.

In the case of Gordon v. Gordon, 49 Mich. 501, 13 N. W. 834, it appears that the articles of partnership provided that the partners were to occupy certain real estate for the purposes of their business. It was held that such agreement conveyed no notice that the property was partnership property, and did not affect a mortgage given by one of the partners on his undivided interest in the property. In McDermot v. Laurence, 7 Serg. & Rawle (Pa.) 438, 443, (10 Am. Dec. 468) the court said:

"But certainly, where it is the intention of partners to bring real property into the common stock, it would be prudent to put their agreement on record, in order that purchasers may not be deceived."

In Reynolds v. Ruckman, 35 Mich. 80, in which the interests of third parties were involved, the court among other things said:

"The record ought generally to be the guide on which parties may safely rely in dealing with the titles which appear there, and they should not be held chargeable with notice of equities controlling the title on facts which are ambiguous. Real estate held by partners may or may not be partnership property, but usually it is not so unless partnership assets have been used to purchase it, or unless it was put in originally as a part of the joint estate. But generally the fact that two or more persons make use of property in which their interests are apparently several, for partnership purposes, is very far from indicating an understanding that it is partnership estate; much less any such conclusive understanding that others would be bound to take notice. The several interests still remain several,

and each may deal with his own as he will, and any private arrangement that would change this could not bind third parties who had acted in ignorance of it.''

The case of Hammond v. Paxton, 58 Mich. 393, 25 N. W. 321, is a similar case. The court among other things said:

''The other claim of the defendant is that the mortgagor had actual notice of the fact that the real estate was partnership property, and therefore the equity of the creditors is superior to his. The evidence relied upon to prove actual notice was that the firm quarried and used the sand upon the lands first above described, and were when the first bill of complaint was filed in the actual possession thereof, and such possession continued down to the time of the execution of the mortgage. And this possession is relied upon as notice of the fact that the land so possessed and used was partnership property. The record title, however, disclosed that Paxton and Toll were tenants-in-common of the real estate, each owning an undivided half interest therein; and the question arises whether or not the possession and use of the real estate thus owned is not as consistent with the individual ownership of each as tenants-in-common as that it is firm property. We think it is, and that a person dealing with the individual partner had a right to rely upon the record title, and there was nothing in the fact that the firm was hauling sand from these lands which indicated that they belonged to the firm, or that was sufficient to put a purchaser upon inquiry.

It is common knowledge that partnerships are found in the possession and use of real estate, of which they either have no title, or hold the same as tenants-in-common, and that such real estate forms no part of the assets of such firms. Two or more persons may be the owners of a stone quarry, and hold undivided interests in the title thereof, and there is nothing inconsistent with such ownership for these persons to form a partnership in quarrying and mar-

keting the stone without putting the real estate into the partnership at all. Unless there was something in the record which indicated that the land was held by the firm as partnership property, or that the property was purchased jointly with partnership funds, a purchaser in good faith for value ought to be protected."

In the case of Martin v. Carlisle, 46 Okla. 268, 148 Pac. 833, 6 A. L. R. 154, the court says as follows:

"We are not unmindful of the fact that in cases like the one at hand, where the record title does not indicate a partnership holding, but appears to be a title held as tenants in common by the individual members, the record must be the guide on which parties dealing with one of the partners individually may with safety rely, and they ought not to be charged with notice of equities existing between the partners, which do not show of record, or which has not been brought to the knowledge of the purchaser of such partnership interest, and the purchaser from a partner of his undivided interest in real estate held by partners in their individual names cannot lightly be divested thereof, and titles thus obtained should be held good, until it is shown by evidence that is clear and convincing that it was not acquired in good faith, but that the purchaser had notice that it was partnership property. * * * there is a strong presumption of law that when land is deeded to the several members of a partnership individually, without any showing in the deed that the property is held for the firm, the ownership is in the individual members of said firm and the fact that the property was used as the place for conducting the business of the partnership does not of itself disclose an intent to make it partnership property, and is not sufficient proof that it was partnership property, when the evidence shows, as in this case, that it was the only place said partners had for carrying on their business. The proof must not only show that it was purchased with partnership funds and used

for the partnership purposes, constituting a part of the partnership assets, but there must be further proof that the purchaser knew these facts or had knowledge of such facts that would put a reasonably prudent man upon inquiry which, followed up, would give him the information that the property was of the assets of the firm.''

See also Frink v. Branch, 16 Conn. 260, 271.

Some of the cases, collected by Bates on Partnership, Sec. 295, hold that the use made of certain property of the partnership was such as to put third parties upon notice that the property belonged to the partnership. But the facts in those cases were entirely different from those in the case at bar. In some of them, the deed to the property showed the ownership; in all of them the partnership had complete, exclusive and continuous possession. In the case at bar, the possession was not exclusive; it was only temporary and partial; it did not indicate that Primm had been deprived of his title. Such use had ceased when the mortgages in controversy were executed. We do not think that such use was calculated to give notice to third parties that the partnership had any interest in the land, particularly in view of the subsequent conduct of Primm when he mortgaged the premises as his own, and in view of the fact that no one else, including the widow and the estate of Arthur Lawrence, had, during an interval of two years after the death of Lawrence, made any move to have the property declared to be partnership property, or had made any claim thereto.

3. The remaining reasons given by counsel for respondents why appellants should be held to have notice that said partnership owned said property, may be disposed of without much further discussion. The fact that the partnership account in the bank was closed by Primm in 1919 is given as one reason. The partnership had probably no money to deposit, and how its poverty, or wealth, for that matter, could convey knowledge that it

owned property the title of which was in some one else, is more than we can grasp. The fact that appellants made a careful investigation of the title is given as another reason. We can see no possible force in that argument. Nor do we see how the power of attorney conveyed any knowledge of the ownership of any particular land. The fact that Roy E. Hays & Co. took a mortgage on an undivided one-half interest in the land, and that the bank had knowledge of that fact, is given as an additional reason. It was shown by the testimony of the members of the former that while Primm claimed the whole of the property, he thought a mortgage on a one-half interest would be ample security. When the mortgage to the bank was given, Primm exhibited his patent, and the records showed nothing that he had parted with any portion of his title. We see no reason why a man may not give a mortgage to an undivided one-half interest in land and why such fact should put the mortgagee upon inquiry not alone that some one else owns the other half, but also that some particular party owns it. In some of the cases already cited a mortgage was in fact given on such undivided interest, without intimation that such fact conveyed any knowledge, actual or constructive, of an outstanding title. We are constrained to hold that the record herein fails to show that appellants had any notice, actual or constructive, that said partnership had any interest in said land, and the judgment herein must be reversed for that reason. We need not, accordingly, pass upon the other points discussed in the brief.

The judgment below is accordingly reversed, and the cause remanded to the district court with directions to enter judgment for appellants and dismiss the case against them.

*Reversed and Remanded.*

POTTER, Ch. J., and KIMBALL, J., concur.

Potter, Chief Justice, concurring.

While I concur in the views and conclusion. expressed in the opinion delivered for the court by Mr. Justice Blume, as well as in the order to be entered as therein directed, I think attention should be called to certain facts of the procedure in the cause, including the terms of the judgment, to avoid any effect thereof as a precedent that our silence concerning the matter might be supposed to justify;. but without deciding as to the propriety or sufficiency of such procedure. I think some doubt may reasonably be entertained respecting the remedy granted in the court below; viz: the cancellation of the mortgages .executed by Primm to secure his individual debts, and making permanent the injunction against the foreclosure of said mortgages, without any order or proceeding for a sale of the property and disposition of the proceeds, or a marshalling of assets or liens.

The prayer of the amended petition upon which the cause was tried is that further proceedings for the foreclosure of the mortgage by defendant Hays & Co. be enjoined, as well as the collection of the debt secured thereby in any manner from the firm assets; that said mortgages, as well as the mortgage to the bank, be cancelled, held for naught, and an order entered clearing the record thereof; that the defendant bank also be enjoined from collecting its debt from the firm assets, and that all the proceeds of the real estate involved be declared an asset of the partnership and held for the payment of the judgment of the plaintiffs, and then to be applied to such other indebtedness as may be proper.

This prayer, upon a finding that the. property was firm property to be first applied to satisfy firm debts, and that the mortgages were inferior to the claims or liens of partnership creditors, might. be sufficient upon which to base a direction for the sale of the property and a disposition of the proceeds accordingly, or for a marshalling of assets or securities. See 30 Cyc. 536; Stowe v. Powers, 19 Wyo.

291, 116 Pac. 576. But the findings were limited to a finding that the lands specifically involved were and are partnership property; that the mortgages aforesaid were given for individual debts ''and a fraud on the creditors of the firm;'' that plaintiffs are entitled to have the land subjected to the payment of their judgment; and that the temporary injunction was properly granted staying the foreclosure of the Hays mortgage. And it was thereupon ordered and adjudged that the mortgages ''be and the same are hereby cancelled, set aside and held for naught, and all lien, claim, right, title or interest therein, on account thereof is hereby set aside and held for naught * * * that a copy of this order and judgment be filed for record'' and thereupon have the same force and effect as a cancellation and release thereof by the mortgagees, and that the temporary injunction be made permanent.

Thus the judgment stops short of directing the sale of the property and the disposition of the proceeds, by merely cancelling the mortgages and permanently enjoining foreclosure thereof. There does not appear to have been any finding as to the value of the property, or whether or not it was sufficient to more than satisfy the judgment lien adjudged a priority over the mortgages; nor does it appear that an execution had been levied thereon under the judgment, or any proceeding, aside from this action, taken to subject the land to said judgment lien.

I do not understand that the mere fact that a mortgage is found to be inferior in rank to another lien or charge upon the property constitutes a good and sufficient reason for adjudging its cancellation, at the suit of one holding the superior claim. Unless the giving of mortgages by a partner upon firm property, or his interest in it, to secure his own debt, be prohibited, limited or regulated by some provision of statute, it would seem improper to completely set aside and cancel the said mortgages in this action, at least upon the showing made. For, in the absence of some such statutory prohibition, limitation or regulation, it

would seem that these mortgages would be valid, notwithstanding that their lien might be subject to superior claims of firm creditors. See 30 Cyc. 548, where it is said as to such a mortgage:

"A mortgage of a partner's interest in partnership property, although made to secure individual debts of the mortgaging partner, is valid. In other words, it passes only the ultimate share of each partner, that is, the amount due to him after the payment of firm debts and the adjustment of the equities of his co-partners. If firm real estate is allowed to stand in the name of the mortgaging partner, one who loans money to him and takes his mortgage thereon without notice of the firm's rights, acquires a lien prior to the claims of the firm creditors."

I think it may, therefore, be questionable whether the judgment, in its present form, without modification saving the rights of the mortgagees, could have been sustained, even upon the theory that those rights are inferior to the judgment lien of the plaintiffs.